1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Acting Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  CYNTHIA C. FRITZ, State Bar No. 200147
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5793
     Fax: (415) 703-5843
8    Email: Cynthia.Fritz@doj.ca.gov

9  Attorneys for Defendants R. Loza, R. Singh and D.
   Sandoval
10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  **JAHIR ALBERTO ROJAS,**                    C 07-4662 MMC (PR)

16                              Plaintiff,      **DEFENDANTS' NOTICE OF
                                                MOTION AND MOTION TO
17          v.                                  DISMISS AND MOTION FOR
                                                QUALIFIED IMMUNITY**
18  **R. LOZA, Correctional Officer, R. SINGH,
    Correctional Officer, D. SANDOVAL, Correctional
19  Officer,**

20                              Defendants.

21

22          TO PLAINTIFF JAHIR ALBERTO ROJAS, PRO SE:

23          PLEASE TAKE NOTICE that defendants Loza, Singh, and Sandoval (Defendants) move

24  the Court to dismiss this action for Jahir Alberto Rojas' (Plaintiff) failure to exhaust his

25  administrative remedies before filing suit as required by the Prison Litigation Reform Act

26  (PLRA), 42 U.S.C. § 1997e(a).  Defendants also move the Court for qualified immunity for

27  Plaintiff's damages claim.

28          PLEASE TAKE FURTHER NOTICE that the Court may look beyond the pleadings and

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity      *Rojas v. Loza, et al.*
                                                                              C 07-4662 MMC (PR)

1

1  decide disputed issues of fact when ruling on Defendants' non-enumerated Rule 12(b) motion.

2  *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Plaintiff may provide evidence to the

3  Court to dispute that which is presented by Defendants. *Id.* at n.14.

4       This motion is based on this Notice, the following Memorandum of Points and

5  Authorities, the declarations and exhibits filed in support of this motion, the proposed order, and

6  the pleadings and records on file with the Court in this action.

7                   **MEMORANDUM OF POINTS AND AUTHORITIES**

8                                **ISSUES PRESENTED**

9       1.) The PRLA requires an inmate to properly exhaust administrative remedies before

10  filing civil-rights suits concerning prison conditions. Plaintiff's appeal was not exhausted

11  because he did not complete the final level of review. Does the PRLA's exhaustion provision

12  require that Plaintiff's claims be dismissed?

13      2.) Qualified Immunity protects government officials from liability for damages when

14  their conduct does not violate clearly established rights of which a reasonable prison official

15  would have known. Plaintiff refused to obey orders during a prison yard disturbance and was

16  found guilty of a prison rules violation. Would reasonable officials in Defendants' positions

17  have believed such conduct violated Plaintiff's rights?

18                              **SUMMARY OF ARGUMENT**

19      The Plaintiff cannot satisfy the PLRA's administrative exhaustion requirement because

20  the administrative appeal received no final Director's level review, and therefore did not properly

21  exhaust all available administrative remedies.

22      Defendants reasonably believed the amount of force used was lawful and necessary to

23  restore order at Salinas Valley State Prison so they are entitled to summary judgment.

24                              **STATEMENT OF THE CASE**

25      Plaintiff Jahir Alberto Rojas, CDCR number P-58734, is a state prisoner currently

26  incarcerated at California State Prison, Corcoran. On September 10, 2008, Plaintiff filed this

27  action under 42 U.S.C. § 1983. On April 28, 2008, this Court screened Plaintiff's complaint

28  under the PLRA, and recognized an Eighth Amendment claim for excessive force against

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity              *Rojas v. Loza, et al.*
                                                                                    C 07-4662 MMC (PR)

1    Defendants Loza, Singh, and Sandoval. (Order of Initial Review, Docket No. 8, dated April 28,

2    2008, at 2:13-15.) The Court's screening order required a dispositive motion to be filed by July

3    27, 2008. (*Id.* at 3:6-8.)

4                                    **STATEMENT OF FACTS**

5    1.      On February 12, 2007, Defendants responded to a massive standoff at Salinas Valley

6    State Prison between approximately one hundred and forty African-American and Southern

7    Hispanic inmates which resulted in a standoff, where all inmates refused to leave the yard. (*See*

8    Compl., Docket No. 1, Ex. G, Rules Violation Report.)

9    2.      During the disturbance, correctional officer Morring ordered Plaintiff to crawl backward

10   toward a skirmish line formed by other correctional officers. (*See Id.,* Ex. A, Crime Incident

11   Report.)

12   3.      Plaintiff refused the order but instead shouted "fuck that shit" and began advancing

13   toward staff with clenched fists. (*See Id.*)

14   4.      Defendant Loza then ordered the Plaintiff multiple times to lie face down on the ground.

15   (*See Id.*)

16   5.      Defendant Loza then placed Plaintiff in flexcuffs and began escorted him to the skirmish

17   line. (*See Id.*)

18   6.      During the escort, Plaintiff violently twisted his upper torso and swung his elbows from

19   left to right. (*See Id.*)

20   7.      Defendant Loza gave direct orders to stop resisting, which the Plaintiff refused, and then

21   swung his left elbow into Defendant Loza's right ribcage. (*See Id.*)

22   8.      Defendant Loza, with the assistance of Defendant Singh, forced Plaintiff to the ground,

23   face down. (*See Id.*)

24   9.      As Defendant Loza tried to gain control of the Plaintiff, he began shouting "Get them."

25   (*See Id.*)

26   10.     Immediately, the remaining unsecured Southern Hispanic inmates stood up and began

27   advancing toward Defendant Loza, as Plaintiff continued to resist by swinging his elbows and

28   kicking his feet. (*See Id.*)

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
                                                                                 C 07-4662 MMC (PR)

1  11.    Defendant Loza ordered the Plaintiff to stop resisting, which he refused, forcing

2  Defendant Loza to pepper spray Plaintiff's upper torso. (*See Id.*)

3  12.    At this point, Defendant Loza observed multiple Southern Hispanics advancing toward

4  him, so he deployed a blast dispersion grenade to subdue them. (*See Id.*)

5  13.    Defendant Sandoval then aided Defendant Loza in resuming Plaintiff's escort to a

6  temporary holding cell in the Health Services Annex. (*See Id., Ex. G, Rules Violation Report.*)

7  14.    While Defendant Loza and Defendant Sandoval attempted to place Loza in a temporary

8  holding cell, Plaintiff began vigorously shaking his body in a left and right motion, and broke

9  free of their hold. (*See Id.*)

10  15.    Plaintiff then grabbed Defendant Loza's right forearm, while his hands were restrained to

11  the rear by his flex cuffs. (*See Id.*)

12  16.    While maintaining his hold on Defendant Loza, Plaintiff pulled his body forward, pulling

13  Defendant Loza on top of him and to the ground. (*See Id.*)

14  17.    Finally, Defendants Loza and Sandoval regained control of Plaintiff and placed him in a

15  temporary holding cell. (*See Id.*)

16  18.    Due to his disruptive behavior, Defendant Loza recommended Plaintiff's transfer to

17  another Level four institution. (*See Id.*)

18  19.    Plaintiff was later found guilty of the Rules Violation for battery on a peace officer.

19  (See Medina Decl. ¶ 6, Ex. C.)

20  20.    Plaintiff alleges that during the initial disturbance and escort, Defendant Loza thrust his

21  knee into Plaintiff's back, placed his flexcuffs on too tight, jerked him during the escort, swung

22  him to the ground, and deployed pepper spray on him. (*See* Compl., Docket No. 1, at 4(I) ¶ 4, 5,

23  6.)

24  21.    Plaintiff's only allegation against Defendant Singh is that he jerked him during his escort

25  toward the skirmish line formed by the officers during the yard fight disturbance. (*See* Id. at 4(I)

26  ¶ 5.)

27  22.    Plaintiff also alleges that after being escorted to the Health Annex, Defendant Loza and

28  Sandavol rammed his head into a wall, hit him with their fists in the upper and lower torso, and

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
C 07-4662 MMC (PR)

1   kicked him in the head, face, and torso. (*See Id.* at 4(I) ¶ 8, 9, 10.)

2   23.    The medical records submitted by Plaintiff show bruising to the head, swelling to the left

3   eye, a small abrasion and bruise to the left shoulder, and pepper spray exposure to the front torso

4   and back shoulders. (*See id.* at Ex. D. Medical Report of Injury or Unusual Occurrence.)

5   24.    The medical records do not show any injuries to the wrists, upper torso, or lower torso.

6   (*See Id.*)

7   25.    On March 28, 2007, the Salinas Valley Inmate Appeals Office received Plaintiff's

8   administrative appeal, bearing institutional log number SVSP-D-07-01389 (Appeal), regarding

9   the February 12, 2007 incident. (Medina Decl. ¶ 5, Ex B.)

10  26.    The Appeal automatically bypassed the informal level of appeal due to the excessive

11  force allegations. (*Id.*)

12  27.    The Appeal, however, was screened out for untimeliness because it was filed forty-four

13  days after the alleged incident and well beyond the fifteen-working-day requirement under the

14  Code. (Cal. Code Regs. tit. 15, § 3084.6(c);  Medina Decl. ¶ 5, Ex. B.)

15  28.    Plaintiff then submitted the Appeal to the third formal review level. (Grannis Decl. ¶ 9,

16  Ex. A.)

17  29.    The Director's level screened out the Appeal for failure to submit to the second formal

18  level of review. (*Id.*)

19                              **ARGUMENT**

20  **I.    THE PRISON LITIGATION REFORM ACT'S EXHAUSTION REQUIREMENT**
       **REQUIRES DISMISSAL OF UNEXHAUSTED CLAIMS**

21

22  **A.    Legal Standard.**

23         When an inmate-plaintiff fails to exhaust, a defendant may file a non-enumerated Rule

24  12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003).  In ruling on

25  such a motion, a court may look beyond the pleading to decide disputed issues of fact regarding

26  exhaustion. *Id.*  The proper disposition for failure to exhaust is dismissal without prejudice. *Id.*

27  at 1120.

28         The PLRA requires that inmates exhaust their available administrative remedies before

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
                                                                                  C 07-4662 MMC (PR)

1   filing civil-rights actions in federal courts.  42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516,

2   524 (2002); *McKinney v. Carey,* 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  In addition, the

3   Supreme Court held that exhaustion of available remedies requires that a prisoner "properly

4   exhaust," which means that "prisoners must complete the administrative review process in

5   accordance with the applicable procedural rules, . . . rules that are defined not by the PLRA, but

6   by the prison grievance process itself." *Jones v. Bock,* 549 U.S. 199, 211 (internal citations and

7   quotation marks omitted) (quoting *Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006)).  Therefore,

8   "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to

9   'properly exhaust.'" *Id.*  The Supreme Court also affirmed that a prisoner cannot satisfy the

10  PLRA's exhaustion requirement "by filing an untimely or otherwise procedurally defective

11  administrative grievance or appeal." *Id.* at 2382.  A prisoner must properly proceed through each

12  stage of the administrative process, to obtain a final Director's level of review in order to bring a

13  federal lawsuit. *Id.* at 2387.

14  **B.     California's Inmate Appeals Process.**

15          The grievance process in the State of California allows inmates in California prisons to

16  appeal "any departmental decision, action, condition, or policy which they can demonstrate as

17  having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1.  To exhaust this

18  process, before proceeding to federal court, an inmate must proceed through four levels of

19  appeal: (1) informal level; (2) first formal level; (3) second formal level; and (4) third formal

20  level, also known as the Director's level review. *Id.* § 3084.5.  A decision at the third formal

21  level, or Director's level of review, is final and constitutes exhaustion of available administrative

22  remedies. *Id.* §§ 3084.1(a), 3084.5(e)(2).

23          To initiate the inmate appeal process, inmates must use a form CDC 602 (Form) to

24  describe the problem complained of and the action requested.  (Cal. Code Regs. tit. 15, § 3084.2;

25  Grannis Decl. ¶ 3.)  The inmate must submit the Form to the Appeals Coordinator within fifteen

26  working days of the action taken. *Id.* § 3084.6(c).  An inmate's appeal may be rejected where the

27  time limits for submitting the appeal are exceeded and the appellant had the opportunity to file

28  within the prescribed time constraints. *Id.* § 3084.3(c)(6).  The informal level is bypassed for

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
C 07-4662 MMC (PR)

1  excessive force allegations. *Id.* §§ 3084.5(a)(3)(b), 3084.5(b)(a)(4).

2  **C.    This Action Must be Dismissed Because Plaintiff Filed an Untimely Administrative**
       **Appeal.**

3

4          On March 28, 2007, the Salinas Valley State Prison Inmate Appeals Office received

5  Plaintiff's Appeal regarding the alleged February 12, 2007 incident. (Medina Decl. ¶ 5, Ex B.)

6  The Appeal automatically bypassed the informal level of appeal due to the excessive force

7  allegations. (Id.)  The Appeal, however, was screened out for untimeliness because it was filed

8  forty-four days after the alleged incident, well after the fifteen working days required under the

9  Code had expired. (Cal. Code Regs. tit. 15, § 3084.6 (c);  Medina Decl. ¶ 5, Ex. B.)

10         The Appeal was returned to Plaintiff and submitted to the third formal review level.

11  (Grannis Decl., ¶ 9, Ex. A.)  The Director's level screened out the Appeal for failure to submit to

12  the second formal review level. (Id.)

13         Plaintiff did not comply with the critical inmate appeals timing requirements.  Since

14  Plaintiff failed to file a timely Appeal in this matter, he did not properly exhaust his

15  administrative remedies.  Accordingly, the case must be dismissed under *Woodford,* 126 S.Ct. at

16  2384.  *Woodford* involved a California inmate who filed an administrative grievance six months

17  after the event. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006).  The grievance was rejected for the

18  same reason as in this case.  It was untimely because it was not filed within fifteen working days

19  of the event under California Code of Regulations, tit. 15 § 3084.6(c).  The Supreme Court held

20  that the PLRA required an inmate to comply with the administrative grievance rules: "[p]roper

21  exhaustion of administrative remedies demands compliance with an agency's deadlines and other

22  critical procedural rules because no adjudicative system can function effectively without

23  imposing some orderly structure on the course of its proceedings." *Id* at 2386.

24         Since *Woodford* holds that inmates who fail to timely comply with the prison's

25  administrative grievance procedures are barred from suing on their claims, Plaintiff's untimely

26  appeal is barred and the complaint should be dismissed without prejudice.

27  ///

28  ///

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity                    *Rojas v. Loza, et al.*
                                                                                            C 07-4662 MMC (PR)

7

1    II.    **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

2    A.    **Qualified Immunity Standard.**

3    The defense of qualified immunity applies to "government officials performing

4    discretionary functions," who are "generally are shielded from liability for civil damages insofar

5    as their conduct does not violate clearly established statutory or constitutional rights of which a

6    reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation

7    omitted). The rule of qualified immunity "provides ample protection to all but the plainly

8    incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 494-495

9    (1991) (citation omitted).

10    In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a sequence of

11    questions to be considered in determining whether qualified immunity is applicable. First, a

12    Court must consider this threshold question: "Taken in the light most favorable to the party

13    asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

14    right?" *Id.* at 201. If no constitutional right was violated under the alleged facts, the inquiry ends

15    and defendants prevail. *Id.* If, however, "a violation could be made out on a favorable view of

16    the parties' submissions," then the next sequential step is to ask whether the right was clearly

17    established. *Id.*

18    B.    **Defendants Are Entitled to Qualified Immunity Because Plaintiff Failed to Show**
       **Defendants' Actions Violated a Constitutional Right.**
19

20    As to the first prong of *Saucier*, Defendants did not violate Plaintiff's Eighth Amendment

21    rights. Plaintiff's sole basis for relief against Defendants is excessive force against him during a

22    yard standoff. (Compl., Docket No. 1, dated September 10, 2007, at 3 - 4III.)

23    Whenever a prison official is accused of using excessive force in violation of the Eighth

24    Amendment, the core judicial inquiry is whether the force was applied in a good-faith effort to

25    maintain or restore discipline, or maliciously and sadistically for the very purpose of causing

26    harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21

27    (1986). To make that ultimate determination, the court may properly consider such factors as (1)

28    the extent of injury suffered by the Plaintiff; (2) the need for the application of force; (3) the

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity        *Rojas v. Loza, et al.*
                                                                                C 07-4662 MMC (PR)

1  relationship between that need and the amount of force used; (4) the threat reasonably perceived

2  by the responsible officials; and (5) whether officials made efforts to temper the severity of a

3  forceful response. *Hudson*, 503 U.S. at 12; *Whitley*, 475 U.S. at 321.

4         Prison officials must balance competing interests such as the need to restore order, the

5  very real threat the disturbance poses to inmates, and the possible harm to inmates against whom

6  force is used. *Whitley*, 475 U.S. at 320. Such decisions are "necessarily made in haste, under

7  pressure, and frequently without the luxury of a second chance." *Id.*

8         "Prison administrators . . . should be accorded wide-ranging deference in their adoption

9  and execution of policies and practices that in their judgment are needed to preserve internal

10 order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547

11 (1979). "That deference extends to a prison security measure taken in response to an actual

12 confrontation with riotous inmates . . . . [C]ourts must determine whether the evidence goes

13 beyond a mere dispute over the reasonableness of a particular use of force or the existence of

14 arguably superior alternatives." *Whitley*, 475 U.S. at 322. While officials are not insulated from

15 actions taken in bad faith or for no legitimate purpose, courts should not second guess the

16 judgment of the officials who have made a considered choice. *Id.*

17        On February 12, 2007, Defendants responded to a massive disturbance at Salinas Valley

18 State Prison between approximately one hundred and forty African-American and Southern

19 Hispanic inmates which resulted in a standoff, where all inmates refused to leave the yard. (*See*

20 Compl., Docket No. 1, dated September 10, 2007, Ex. G, Rules Violation Report.) During the

21 disturbance, a skirmish line was formed and correctional officer Morring ordered Plaintiff to

22 crawl backward toward it. (*See Id.*, Ex. A, Crime Incident Report.) Plaintiff refused the order but

23 instead shouted "fuck that shit" and began advancing toward staff with clenched fists. *Id.*

24 Defendant Loza then ordered Plaintiff multiple times to lie face down. *Id.* Plaintiff eventually

25 complied and Defendant Loza placed him in flexcuffs and escorted him to the skirmish line. *Id.*

26        During the escort, Plaintiff violently twisted his upper torso and swung his elbows from

27 left to right. (*See Id.*, Ex. A, Crime Incident Report.) Defendant Loza gave direct orders to stop

28 resisting the escort, which Plaintiff refused, and then swung his left elbow into Defendant Loza's

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
                                                                                C 07-4662 MMC (PR)

9

1   right ribcage. *Id.* Defendant Loza, with the assistance of Defendant Singh, forced Plaintiff to the

2   ground in the prone position. *Id.* Plaintiff landed on his upper torso area and his face. *Id.* The

3   initial use of force against Plaintiff by Defendants Loza and Defendant Singh was necessary to

4   maintain and restore order and security during a massive disturbance in the yard.

5       After Plaintiff was forced to the ground, Plaintiff shouted "Get them." *Id.* Immediately,

6   the remaining unsecured Southern Hispanics stood up and began advancing toward Defendant

7   Loza, as Plaintiff continued to swing his elbows and kick his feet. *Id.* Defendant Loza then

8   ordered the Plaintiff to stop resisting, which he refused, forcing Defendant Loza to pepper spray

9   Plaintiff's upper torso to gain compliance. *Id.* At this point, Defendant Loza observed multiple

10  Southern Hispanics advancing toward him. *Id.* This involvement by other inmates heightened

11  the risk and potential danger of the situation causing Defendant Loza to deploy a blast dispersion

12  grenade. *Id.* Aware of this danger and concerned for the safety of himself, other officers, and the

13  security of the institution, Defendant Loza dispensed the pepper spray and other chemical agents

14  in order to persuade Plaintiff to comply with his orders and to maintain order.

15      Afterward, Defendant Sandoval aided Defendant Loza in Plaintiff's escort to a temporary

16  holding cell in the Health Services Annex. (*See* Compl., Docket No. 1, dated September 10,

17  2007, Ex. G, Rules Violation Report.) While Defendant Loza and Defendant Sandoval

18  attempted to place Loza in a temporary holding cell, Plaintiff began vigorously shaking his body

19  in a left and right motion, and broke free of their hold. *Id.* Plaintiff then grabbed Defendant

20  Loza's right forearm, while his hands were restrained to the rear by his flex cuffs. *Id.* While

21  maintaining his hold on Defendant Loza, Plaintiff pulled his body forward, pulling Defendant

22  Loza on top of Plaintiff and to the ground. *Id.* Plaintiff posed an obvious and immediate threat

23  to the Defendant officers and the security of the building compelling the Defendants to physically

24  regain control of the Plaintiff. Ultimately, Defendants Loza and Sandoval successfully placed

25  Plaintiff in a temporary holding cell and later recommended his transfer to another Level four

26  institution. *Id.* Plaintiff was later found guilty of the Rules Violation for battery on a peace

27  officer. (*See* Medina Decl. ¶ 6, Ex. C.)

28      While Plaintiff claims that the Defendants placed his handcuffs on too tight, kneed him in

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
                                                                                 C 07-4662 MMC (PR)

1   the back, slammed him to the ground, pepper sprayed him, rammed his head, and hit and kicked

2   him in the head and torso, the medical records corroborate Defendants' statements of the

3   incident.  The medical records show bruising to the head, small swelling to the left eye, a small

4   abrasion and bruise to the left shoulder, and pepper spray exposure to the front torso and back

5   shoulders, which are consistent with pepper spraying and forcing an inmate to the ground, face

6   down. (*See* Compl., Docket No. 1, dated September 10, 2007, Ex. D, Medical Report of Injury

7   or Unusual Occurrence.)  The medical records do not show any injuries to the wrists, upper torso,

8   or lower torso as alleged in the Plaintiff's Complaint. (*See Id.*)

9         Throughout the struggle to maintain control over the assaultive Plaintiff, the officers

10  used the minimal amount of force required to control Plaintiff.  Further, Defendants

11  gave Plaintiff numerous orders to stop resisting.  Defendants Loza, Sandoval, and Singh merely

12  defended themselves and utilized appropriate force to maintain control and order during a

13  dangerous assault, which is supported by the medical records, Rules Violation Report, and Crime

14  Incident Report that Plaintiff submitted to this Court.  Further, Plaintiff's injuries were minimal.

15        As a result, these officers did not act maliciously or sadistically towards Plaintiff.  They

16  simply did what they had to do to protect themselves and to maintain order and security in the

17  prison.  As a result, there was no constitutional violation by Defendants and they should be

18  afforded qualified immunity.

19  **B.    Defendants are Entitled to Qualified Immunity Because It Would Not Have Been**
        **Clear to Reasonable Officials that the Conduct at Issue was Unlawful.**
20

21        Assuming, arguendo, that a constitutional violation could be found, then the next step

22  under *Saucier* is to ask whether the right violated was a clearly established right.  This is an

23  inquiry that "must be undertaken in light of the specific context of the case, not as a broad

24  general proposition." *Saucier*, 533 U.S. 194.  More specifically, the "relevant, dispositive inquiry

25  in determining whether a right is clearly established is whether it would be clear to a reasonable

26  officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

27        Here it would not have been clear to a reasonable officer that such conduct as alleged was

28  unlawful in the context of subduing the Plaintiff during a standoff.

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
                                                                                 C 07-4662 MMC (PR)

1    There is no clearly established right for an inmate to be free from restraint as long as he

2  poses a risk to the safety and security of the institution.  On the contrary, as long as an inmate

3  poses a security risk, prison officials are "authorized and indeed required to take appropriate

4  measures to maintain prison order." *LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993).  As

5  noted by the Ninth Circuit,

6          [The Plaintiff Inmate] is the master of his own fate.   As long as he engages in
           violent and disruptive behavior, prison officials are authorized and indeed
7          required to take appropriate measures to maintain prison order and discipline and
           protect staff and other prisoners from such violent inmates.
8  *Id.*

9    In this case, Plaintiff's refused several direct orders, advanced toward staff with clenched

10 fists, incited other inmates, hit Defendant Loza in the ribs, and later grabbed Defendant Loza and

11 forced him to the ground.  (*See* Compl., Docket No. 1, dated September 10, 2007, Ex. G.)

12 Although Plaintiff alleges that Defendants placed his handcuffs on too tightly, pushed him to the

13 ground, and assaulted him, under these circumstances of an ongoing inmate standoff, a

14 reasonable prison official would not have believed that using an amount of force reasonably

15 necessary to restore order and protect correctional officers was unlawful.  Even if Defendants'

16 actions were found to have violated a constitutional right, they should been afforded qualified

17 immunity since they acted as reasonable officers under the circumstances of a stressful massive

18 inmate standoff.  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity          *Rojas v. Loza, et al.*
                                                                                  C 07-4662 MMC (PR)

1

**CONCLUSION**

2        Defendants respectfully request that the Court dismiss this action since Plaintiff failed to

3  exhaust his available administrative remedies through the requisite third level.  Additionally,

4  Defendants are entitled to qualified immunity.

5  Dated: July 25, 2008

6

7                      Respectfully submitted,

8                      EDMUND G. BROWN JR.
Attorney General of the State of California

9                      DAVID S. CHANEY
Chief Assistant Attorney General

10                 ROCHELLE C. EAST
11                 Acting Senior Assistant Attorney General

12                 MICHAEL W. JORGENSON
Supervising Deputy Attorney General

13

14

15

16                 CYNTHIA C. FRITZ
Deputy Attorney General
Attorneys for R. Loza, D. Sandoval, and R. Singh

17

18

19  20124790.wpd
SF2008401788

20

21

22

23

24

25

26

27

28

Defs.' Not. of Mot. and Mot. to Dismiss and Mot. for Qualified Immunity        *Rojas v. Loza, et al.*
C 07-4662 MMC (PR)

13