Jahir A. Rojas. P58734
C.S.P Corcoran. 4A.4R#13
PO Box 3476
Corcoran CA. 93212-3476
Plaintiff    In Proper

**FILED**

AUG 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
— SAN FRANCISCO DIV. —

CASE NO. C07-4662 MMC (PR)

PLAINTIFFS NOTICE OF OPPOSITION AND
OPPOSITION TO DEFENDANTS MOTION
TO DISMISS, AND MOTION FOR QUALIFIED
IMMUNITY

JAHIR A. ROJAS.

        PLAINTIFF,

V.—

R. LOZA; ET AL.)

        DEFENDANTS

TO DEFENDANT R. LOZA; D. SANDOVAL. R. SINGH

PLAINTIFF JAHIR. A. ROJAS HEREBY GIVES NOTICE TO DEFENDANTS THAT HE FILES THIS OPPOSITION TO DEFENDANTS MOTION FOR DISMISSAL UNDER THE PRISON LITIGATION REFORM ACT (PLRA), 42 USC § 1997 e(a); AND MOTION FOR QUALIFIED IMMUNITY. ON THE GROUNDS THAT THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE AND THAT DEFENDANTS ARE NOT ENTITLED TO DISMISSAL AS A MATTER OF LAW. PLAINTIFF FURTHER MAINTAINS THAT IN ANY EVENT DEFENDANTS R. LOZA, R. SINGH; D. SANDOVAL ARE NOT ENTITLED TO QUALIFIED IMMUNITY IN THIS CAUSE OF ACTION.

THIS OPPOSITION IS BASED ON THIS NOTICE OF OPPOSITION AND OPPOSITION; THE ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES; THE EXHIBITS, THE DECLARATION OF PLAINTIFF; AND THE COURT FILES IN THIS MATTER.

1 │ JAHIR A. ROJAS #P58734
2 │ C.S.P CORCORAN 4A 4R#13
   │ PO BOX 3176
3 │ CORCORAN CA. 93212-3476
   │ PLAINTIFF, IN PRO PER
4
5
6
7                              UNITED STATES DISTRICT COURT
8                          FOR THE NORTHERN DISTRICT OF California
9                          — SAN FRANCISCO DIV —
10                                    CASE NO C07-4662 MMC (PR)
11 │ JAHIR A. ROJAS,
12 │            PLAINTIFF,
13 │ V—
14 │ R. LOZAi ETAL.,
15 │            DEFENDANTS
16
17       PLAINTIFFS NOTICE OF OPPOSITION AND OPPOSITION TO
18   DEFENDANTS MOTION FOR DISMISSAl, AND MOTION FOR
19   QUALIFIED IMMUNITY
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

CASES

SAUCIER V. KATZ
533 U.S. 194 (2001) .......................................... PAGE: 6

HARLOW V. FITZGERALD,
457 U.S. 800, 818 (1982) ............................... PAGE. 6

BEHRENS V. PELLETIER,
516 U.S. 299, 313 (1996) ............................... PAGE. 6

HUDSON V. McMILLAN,
U.S. — 112 S-CT. 995 (1992) ........................ PAGE. 7

MILSON V. SEITER,
501 U.S. 294 (1991) ....................................... PAGE. 7

WHITLEY V. ALBERS,
475 U.S. 312 (1986) ....................................... PAGE 7

UNWIN V. CAMPBELL,
863 F.2d 124, 135 (CAL 1988)
(OPINION OF CAMPBELL C.J.) ......................... PAGE 8

WYATT V. DELONEY
818 F.2d 21, 23 (CA 8 1987) .......................... PAGE. 8

BOOTH V. CHURNER,
532 US. 731, 738, 121 S.CT.
1819, 1824, 149 L.ED. 2d 958,
965 (2001) ....................................................... PAGE. 11

BOYD V. CORR.CORP.OF AM,
380 F.3d 989, 996 (4TH CIR. 2004) ............. PAGE. 12

LEWIS V. WASHINGTON,
300 F3d 829, 833 (7TH CIR 2003) ............... PAGE. 13

BROOKINS V. VOGEL,
2006 WL 3437486, AT*3,
(E.D.Cal.NOV.28, 2006) ................................. PAGE. 13

PERKINS V. OBEY,
2005 WL 433580, AT*4
(S.D.N.Y. FEB.23.2005) .................................. PAGE. 14

AMAKER V. GOORD,
NO. 98 CIV 3623 (JGK)
1999 WL 511990, AT*4-5*
(S.D.N.Y. JULY 20, 1999) ............................... PAGE. 14

RANGE. EL V. MOSCHETTI
2006 WL 418028, AT*1 (D.COL. JULY 12, 2006) ... PAGE. 14

ROBINSON V. DEPT OF CORR.,
NO 96 CIV 8290 (MBM), 1998 WL 883301,
AT*4 (S.D.N.Y. DEC·17.1998) (UNPUBLISHED) ... PAGE 14

BROWN V. VIALOFF
422 F.2d 926, 935 (9TH CIR 2005) ............... PG.14


CONSTITUTIONAL PROVISIONS

UNITED STATES CONSTITUTION, EIGHTH AMENDMENT ... PAGE.


STATUTES

UNITED STATES CODE, TITLE 42 § 1983 ......... PAGE.

TABLES OF AUTHORITIES (CONTINUED)

i

TABLES OF AUTHORITIES (Continued)

1

2  Court Rules

    FEDERAL RULES OF CIVIL PROCEDURES
3  RULE (54)                                                          Pg.
    RULE (50)                                                          Pg.
4  RULE (58)                                                          Pg.

5

6  CALIFORNIA CODE OF REGULATIONS

    CDC TITLE 15, SECTION 3000, ET SEQ., § 3311                        Pg. 7
7              3084.6(C)                                               Pg. 11, 13
               3084.5 (A),(B)(2)(B),                                   Pg. 14
8              3084.5 (B)(B)(4)                                        Pg. 14

9  PENAL CODE §    2650-2652                                           Pg. 7

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

1

2

3  MEMORANDUM OFF POINTS AND AUTHORITIES

4  ISSUES PRESENTED

5  SUMMARY ARGUMENT

6  STATEMENT OF CASE

7  STATEMENT OF FACTS

8  ARGUMENT

9  I. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

10  A. QUALIFIED IMMUNITY STANDARD

11  B. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY
    BECAUSE PLAINTIFF CAN ESTABLISH THAT DEFENDANTS ACTIONS
12  VIOLATED A CONSTITUTIONAL RIGHT.

13  C. PLAINTIFF ESTABLISHES THAT DEFENDANTS FALSIFIED REPORTS

14  D. DEFENDANTS ARE PROXIMATE CAUSE OF PLAINTIFF INJURIES

15  II. PLAINTIFF FOLLOWED PLRA'S REQUIREMENT TO EXHAUST ALL AVAILABLE
16  ADMINISTRATIVE REMEDIES.

17  A. LEGAL STANDARD

18  B. DEFENDANTS MOTION FOR DISMISSAL OF ALLEGING
19  PLAINTIFF DID NOT EXHAUST ADMINISTRATIVE REMEDIES SHOULD
    BE DISMISSED.

20

21  CONCLUSION

22  EXHIBITS

23  DECLARATION OF J. ROJAS IN SUPPORT

24  OF PLAINTIFFS OPPOSITION TO DEFENDANTS

25  MOTION FOR DISMISSAL AN FOR QUALIFIED IMMUNITY.

26  MOTION FOR APPOINTMENT OF COUNSEL,

27  MOTION FOR REQUEST OF ADMISSION

28  MOTION FOR REQUEST OF PRODUCTION, INTERROGATORIES.

## Memorandum Of Points And Authorities
### Issues Presented

1.) An official is entitled to qualified immunity unless 1. The facts show a constitutional violation and 2. It was clearly established at the time that the conduct was unconstitutional. Defendants sadistically and maliciously assaulted plaintiff while he was under restraints in an unresistive manner. Would reasonable officials in defendants position have believed such conduct violated plaintiffs rights?

2.) The P.L.R.A says you must exhaust "remedies that are "available". A remedy is "available" if it has any "authority" to provide any relief or take any action whatsoever in response to a complaint". Plaintiff submitted appeal in accordance with prison grievance procedure. (I.E.; In a timley manner) Does the P.L.R.A exhaustion provision require that plaintiff's claim be dismissed due to prison officials/employees negligence thwarting plaintiff's ability to exhaust?

### Summary Of Argument

Defendants are proximate cause to plaintiffs injuries; defendants amount of forced used against plaintiff was unlawful and unnecessary. Defendants are not entitled to qualified immunity in this cause of-action. The plaintiff submitted an administrative appeal, and was "screened out" at second level. Plaintiff re-submitted grievance for 2nd-level response and was told not to "resubmit" appeal, thus leaving plaintiff with only alternative; to send grievance to next level, being directors level. Which plaintiff was "screened out" of as well. Plaintiff established "cause and prejudice" to over come a procedural default. Thus satisfying the P.L.R.A's administrative exhaustion requirement.

### Statement Of The Case

On September 10, 2007, plaintiff Jahir A. Rojas c.d.c.r # P58734 filed this

i.

1 Pro Se Civil Rights Action Against Various Correctional Officers at S.VSP.
2 Plaintiff Contends That Correctional Officers at SVSP Harmed Him [sic]
3 Using Excessive Force Against Him. This Court Screened Plaintiffs Complaint Under
4 The PLRA, And Recognized An Eighth Amendment Claim For Excessive Force
5 Against Defendants R. Loza, R. Singh, D. Sandoval (Order Of Initial Review, Docket
6 No 8, Dated April 28, 2008, At 2:13-15). The Courts Screening Order Required
7 A Dispositive Motion/Summary Judgement, To Be Filed By Jun 27, 2008, And A Motion
8 To File Opposition Of Dispositive Motion/Summary Judgement By Aug. 25, 2008
9 (No Later Than 30 Days From The Date Defendant's Motion Is Filed (Id. AT 3:6-8)
10
11                      <u>Statement Of Facts</u>
12 1. On February 12, 2007 Plaintiff Jahir A. Rojas Was At Salinas Valley State Prison
13 Facility "C" Yard, Awaiting, Yard Tower Instructions To Recall Plaintiffs Building
14 In From Yard. While Waiting, Yard Tower Announced For All Inmates To Prone
15 Out On The Ground. Correctional Officers Proceeded To Form A Scrimage line
16 And Began Instructing, Inmates To Crawl Backwards Towards Scrimage
17 line Correctional Officers Had Formed, Once Inmates Reached Scrimage
18 Line, Correctional Officers Handcuffed Them.
19
20 2. When Correctional Officers Called Out To Plaintiff To Crawl Back-
21 wards, Plaintiff Yelled Out To Correctional Officers "That He Could Not Crawl
22 Backwards The Estimated 70 Ft. Correctional Officers Were Demanding,
23 Due To His Problematic Right knee (see: (Compl. Docket No. 1 at 4:1-6) See Rojas) (Decl ⁻⁹)
24
25 3. Plaintiff Attempted To Stand Up And Walk The Estimated 70 Feet
26 Correctional Officers Were Demanding, Of Plaintiff To Get Handcuffed,
27 Correctional Officers Responded By Demanding That Plaintiff "Get Down"
28 Plaintiff Complied And Further Pleaded That He Was Unable To Crawl Backwards

(3.)

1 DUE TO HIS PROBLEMATIC RIGHT KNEE. (SEE PEJRS DECL.)

2

3 4. PLAINTIFF WAS THEN INSTRUCTED TO LIE ON HIS STOMACH AND PLACE HIS

4 HANDS ON HIS SIDES; PLAINTIFF COMPLIED. WHEN DEFENDANT R. LOZA

5 APPROACHED PLAINTIFF, DEFENDANT R. LOZA AGGRESSIVELY THRUSTED HIS

6 KNEE UNTO PLAINTIFF'S BACK, CAUSING PLAINTIFF TO LOSE HIS BREATH.

7

8 5. DEFENDANT R. LOZA THEN PLACED FLEXCUFFS ON PLAINTIFF IN A MANNER

9 WHICH DUG INTO HIS WRISTS AND IMMEDIATELY CONSTRICTED BLOOD FLOW

10 TO HIS HANDS. DEFENDANTS R. LOZA & R. SINGH THEN LIFTED PLAINTIFF OFF

11 OF GROUND; LOZA BY THE FLEXCUFFS; & R. SINGH WITH AN AGGRESSIVE YANK

12 TO PLAINTIFF'S ARM.

13

14 6. AT THIS TIME DEFENDANTS R. LOZA & R. SINGH BEGAN JERKING PLAINTIFF

15 TOWARDS SCRIMAGE LINE, CAUSING PLAINTIFF TO LOSE HIS FOOTING.

16

17 7. DEFENDANTS R. LOZA AND R. SINGH THEN SLAMMED PLAINTIFF TO THE GROUND.

18

19 8. ONCE DEFENDANTS R. LOZA AND R. SINGH SLAMMED PLAINTIFF ONTO GROUND,

20 DEFENDANT R. LOZA DEPLOYED OLEORESIN CAPSICUM (PEPPER SPRAY) ON

21 PLAINTIFF'S FACE AND UPPER TORSO. SEE (COMPL., DOCKET NO. 1 AT ¶ 4,5)

22

23 9. DEFENDANTS R. LOZA AND D. SANDOVAL THEN PROCEEDED TO ESCORT PLAINTIFF

24 OFF YARD TOWARDS FACILITY 'C' YARD HEALTH ANNEX. (SEE Id.)

25

26 10. ONCE INSIDE HEALTH ANNEX DEFENDANTS R. LOZA AND D. SANDOVAL

27 RAMMED PLAINTIFF'S HEAD/FACE INTO A WALL, AND BEGAN TO STRIKE PLAINTIFF

28 WITH CLENCHED FISTS, ALSO KICKING PLAINTIFF IN A SADISTIC AND MALICIOUS

(3)

1  MANNER; ALL WHILE PLAINTIFF WAS IN FLEXCUFFS AND POISED IN AN UNRESISTING

2  MANNER.    SEE (ROJAS DECL.), (PLHINENS DECL. EXHIBIT "A") SEE (ID. AT 4'E;11, 8,9,10.)

3

4  11. UNTIL AN YET TO BE IDENTIFIED CORRECTIONAL OFFICER "JHINDOE" INTERVENED

5  AND PUSHED DEFENDANT R. LOZA OFF OF PLAINTIFF CAUSING DEFENDANT D. SANDOVAL

6  TO DESIST IN HIS WANTON ASSAULT ON PLAINTIFF.

7

8  12. THE "JOHN DOE" CORRECTIONAL OFFICER BEGAN TO SHOUT "NOT RIGHT HERE

9  STUPID MOTHER FUCKERS, NOT RIGHT HERE" AT DEFENDANTS R. LOZA AND D. SANDOVAL

10  PLAINTIFF WAS THEN PLACED IN ONE OF THE HOLDING CAGES INSIDE THE HEALTH ANNEX

11  SEE (ROJAS DECL) (PLHINENS DECL).

12

13  13. WHILE INSIDE THE HOLDING CAGE PLAINTIFF WAS STILL UNDER RESTRAINTS IN

14  FLEXCUFFS. PLAINTIFF NO LONGER HAD ANY SENSATION IN HIS HANDS AND BEGAN

15  TO YELL OUT TO DEFENDANTS R. LOZA AND D. SANDOVAL TO CUT OFF FLEXCUFFS; BUT

16  TO NO AVAIL DID DEFENDANTS RESPOND TO PLAINTIFF'S PLEADINGS. (SEE ROJAS DECL)

17

18  14. PLAINTIFF WAS THEN HOUSED IN D2-AD-SEG-CELL #111. AND FIVE DAYS LATER

19  FROM THE DATE OF FEB.12,2007 INCIDENT. PLAINTIFF WAS TAKEN OUT OF

20  HIS CELL FOR A "VIDEO CAMERA" INTERVIEW, HEARD BY A LT. BARROGA.

21

22  15. DEFENDANT R. LOZA ALLEGES THAT PLAINTIFF VIOLENTLY TWISTED HIS UPPER TORSO

23  AND SWUNG HIS ELBOWS FROM LEFT TO RIGHT; DEFENDANT FURTHER ALLEGES

24  THAT HE GIVES PLAINTIFF ORDERS TO STOP RESISTING, WHICH PLAINTIFF REFUSES,

25  ALSO PLAINTIFF SWUNG HIS LEFT ELBOW INTO DEFENDANT R. LOZA'S RIGHT RIB

26  CAGE (SEE ID.) FURTHERMORE DEFENDANT LOZA ALLEGES THAT WITH THE

27  ASSISTANCE OF DEFENDANT SINGH THEY FORCE PLAINTIFF TO THE GROUND, WHERE

28  PLAINTIFF BEGINS SHOUTING "GET THEM" IMMEDIATELY CAUSING REMAINING

(4.)

1  UNESCORTED SOUTHERN HISPANIC INMATES TO BEGIN ADVANCING TOWARD

2  DEFENDANT LOZA, AS PLAINTIFF CONTINUED TO RESIST BY SWINGING HIS ELBOWS

3  AND KICKING HIS FEET (SEE Id) FORCING DEFENDANT TO UTILIZE PEPPER SPRAY ON

4  PLAINTIFFS UPPER TORSO (SEE Id).

5

6  16. DEFENDANTS R. LOZA AND D. SANDOVAL ALSO ALLEGE THAT WHILE ATTEMPTING

7  TO PLACE PLAINTIFF IN A TEMPORARY HOLDING CELL, PLAINTIFF BEGAN TO VIGOROUSLY SHAKE

8  HIS UPPER TORSO IN A LEFT AND RIGHT MOTION AND BROKE FREE OF THEIR HOLD (SEE Id).

9  DEFENDANTS FURTHER ALLEGE THAT PLAINTIFF GRABS DEFENDANT R. LOZAS RIGHT

10  FOREARM WHILE PLAINTIFF HANDS WERE RESTRAINED TO THE REAR BY FLEX CUFFS, WHILE

11  MAINTAINING HOLD ON DEFENDANT LOZA ; PLAINTIFF PULLS HIS BODY FORWARD, PULLING DEFENDANT

12  LOZA ON TOP OF HIM AND TO THE GROUND (SEE Id)

13

14                                    ARGUMENT

15  I. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

16

17  A. QUALIFIED IMMUNITY STANDARD.

18  AN OFFICIAL IS ENTITLED TO QUALIFIED IMMUNITY UNLESS (1) THE FACTS SHOW

19  A CONSTITUTIONAL VIOLATION AND (2). IT WAS CLEARLY ESTABLISHED AT THE

20  TIME THAT THE CONDUCT WAS UNCONSTITUTIONAL. SAUCIER V. KATZ 533 U.S. 194,

21  201 (2001). WHEN AN OFFICIAL CLAIMS QUALIFIED IMMUNITY, THE COURT MUST

22  DETERMINE WHETHER THE LAW WAS ALREADY ESTABLISHED AT THE TIME THE DEFENDANTS

23  COMMITTED THE ALLEGED ILLEGAL ACTS, HARLOW V. FITZGERALD, 457 U.S. 800, 818 (1982).

24  QUALIFIED IMMUNITY IS A QUESTION FOR THE COURT EVEN IF IT REQUIRES A FACTUAL

25  DETERMINATION AS TO WHETHER THE DEFENDANTS ACTED REASONABLY UNDER THE

26  CIRCUMSTANCES; BEHRENS V. PELLETIER, 516 U.S. 299, 313 (1996). IN THIS

27  CASE THE PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT WAS

28  CLEARLY ESTABLISHED WHEN DEFENDANTS MALICIOUSLY AND SADISTICALLY

(5.)

1  ASSAULTED PLAINTIFF. SEE Hudson V. McMillan, U.S—, 112 S.CT 995 (1992).

2  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE

3  OTHER CORRECTIONAL OFFICERS IN THEIR POSITION COULD AND WOULD

4  HAVE PERCIEVED THAT THEIR CONDUCT WAS UNLAWFUL BECAUSE:

5      • PLAINTIFF WAS UNDER RESTRAINTS AND POSED NO THREAT TO DEFENDANTS

6      • PLAINTIFF COMPLIED WITH DEFENDANTS INSTRUCTIONS AT ALL TIMES.

7      • PLAINTIFF MAINTAINED AN UNRESISTIVE MANNER.

8

9  B.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF
     CAN SHOW THAT DEFENDANTS ACTIONS VIOLATED A CONSTITUTIONAL RIGHT.

10

11  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE OTHER

12  CORRECTIONAL OFFICERS IN THEIR POSITION COULD AND WOULD HAVE PERCIEVED

13  THAT THEIR CONDUCT WAS UNLAWFUL BECAUSE:

14      • PLAINTIFF WAS ASSAULTED WELL AFTER SAID "PRISON DISTURBANCE"

15      • PLAINTIFF WAS UNDER RESTRAINTS AND POSED NO THREATS TO DEFENDANTS

16      • PLAINTIFF MAINTAINED AN UNRESISTIVE MANNER AND THERE WAS NO

17        CAUSE FOR DEFENDANTS APPLICATION OF FORCE.

18  QUALIFIED IMMUNITY SHOULD NOT BE GRANTED IN FAVOR OF DEFENDANTS,

19  PLAINTIFF CAN ESTABLISH THAT DEFENDANTS WERE ACTING MALICIOUSLY AND

20  SADISTICALLY. THE EIGHTH AMENDMENT TO THE U.S CONSTITUTION PROHIBITS

21  CRUEL AND UNUSUAL PUNISHMENT. SEE Hudson V. McMillan, US —, 112 S.CT 995 (1992),

22  Milson V. SEITER, 501 U.S. 294 (1991) ; WHITLEY V ALBERS, 475 U.S. 312 (1986).

23  FURTHERMORE THE CONDUCT OF THESE PRISON GUARDS IS A VIOLATION OF CALIFORNIA

24  PENAL CODE §§ 2650-2652 (WHICH PROHIBITS ANY CORPERAL PUNISHMENT NOT

25  AUTHORIZED BY THE DIRECTOR OF CORRECTIONS AND MAKES ANY DELIBERATE ACT

26  NOT AUTHORIZED BY LAW WHICH CAUSES INJURY TO A PRISONER, PUNISHABLE IN

27  THE SAME MANNER AS INJURY TO A FREE PERSON. FURTHER, DIRECTOR'S RULE (CAL.

28  CODE REGS, TITLE 15 § 3000, ETSEQ.) ALSO FORBIDS GUARDS FROM CONDUCT

(6.)

1  Against Prisoners That Is Non-Professional (3339). Moreover, Unwin v. Campbell

2  803 F.2d 124, 135 (c. 1986) (opinion of Campbell, C.J.) ("Where Institutional Security

3  Is Not At Stake, The officials license to Use Force Is More Limited. To Succeed,

4  A Plaintiff Needs Not Prove Malicious And Sadistic Intent"); Moreover See Watt v.

5  Delaney 898 F.2d 21, 23 (cir. 1987). This Approach Is Consistent With The Courts

6  Admonition In Whitley That The Standard To Be Used Is One That Gives

7  "Due Regard For Differences In The Kind Of Conduct Against Which An Eighth Amendment

8  Objection Is Lodged." 475 US, AT 320, 106 S.CT, AT 1084. In This Cases, Because There

9  Was No Prison Disturbance And "No Need To Use Any Force Since Plaintiff Was

10  Already In Restraints" The Prison Guards Attack Upon Petitioner Resulted In The

11  Infliction Of Unnecessary And Wanton Pain (Id. At 28 — Whitley V. Albers, 475

12  U.S. 312 (1986).

13  On Feb. 12. 2007 S.V.S.P "C" Yard Correctional Officers Conducted Formed A

14  Scrimmage Line, And Proceeded To Flex Cuff Inmates. When It Came Time

15  For Plaintiff To Be Placed In Handcuffs. He Had A Knee Thrusted In

16  His Back. Picked Up Off The Ground By Flexcuffs. Slammed On Ground, And

17  Then Pepper Sprayed (See Ruijs Decl.) Plaintiff Was Escorted Off Yard And

18  Was Taken To Fac. "C" Health Annex. There Defendants R. Loza, D. Sandoval

19  Assaulted Plaintiff With Their Clenched Fist & Feet. Until A Third "John Doe"

20  Prison Guard Intervened And Pushed Defendant Off Plaintiff, Causing The

21  Other Defendant To Desist His Assault On Plaintiff (See Ruijs Decl) (See Phivens Decl)

22  Plaintiff Suffered Numerous Injuries To Face, Head, Upper Lower Torso, Wrists,

23  Cutting Off Sensation To Hands. And To This Day Plaintiff Suffers Mental Anguish,

24  Trauma, Headaches, Brief Disorientation Episodes And Great Loss Of Sensation

25  In His Left Hand.

26

27  C. Plaintiff Establishes That Defendants Falsified Their Reports.

28  Defendant R. Loza Alleges That Plaintiff Refuses Orders To Crawl Backwards,

(7)

1  ONCE FLEX CUFFED BEGINS TO SWING HIS UPPER TORSO IN A LEFT AND RIGHT MOTION,

2  WHICH RESULTS IN DEFENDANT R. LOZA AND R. SINGH TO SLAM HIM ON GROUND;

3  FURTHER ALLEGES THAT PLAINTIFF YELLS OUT "GET THEM" AND CONTINUES TO SWING

4  HIS ELBOWS AND KICK HIS FEET. DEFENDANTS REPORTS/STATEMENTS ARE IN

5  QUESTION. PLAINTIFF PROVIDED EXHIBIT "E" QUESTIONS FOR LOZA-(Q:4-A:4) (SEE ID)

6  DEFENDANT R. LOZA ALLEGES THAT PLAINTIFF YELLS OUT "GET THEM" AND CONTINUES

7  TO SWING HIS ELBOWS AND KICK HIS FEET ONCE PLAINTIFF IS SLAMMED ON GROUND BY

8  DEFENDANTS LOZA, SINGH. PLAINTIFF REITERATES SAME QUESTION TO DEFENDANT

9  R. SINGH (SEE EXHIBIT "E" QUESTIONS FOR SINGH (Q-3-A:3) ID). DEFENDANT R. SINGH RESPONSE

10 IS PLAINTIFF STATES: "FUCK YOU DIRTY MOTHERFUCKERS, FUCK THESE PIGS UP!"

11 DEFENDANTS R. LOZA AND R SINGH WERE IN THE SAME PROXIMITY WHEN THEY SLAMMED

12 PLAINTIFF ON GROUND, YET THEY ALLEGE COMPLETELY DIFFERENT STATEMENTS COMING

13 FROM PLAINTIFF. FURTHER MORE PLAINTIFF PRODUCES (CORRECTIONAL OFFICER HENLEY CRIME/

14 INCIDENT REPORT PART C. STAFF REPORT PG 1 OF 3) (ATTACHED HERE TO AS EXHIBIT), PG 2

15 OF C/O HENLEY REPORT WHERE SHE ALLEGES ANOTHER INMATE SHOUTS OUT "FUCK

16 THIS SHIT LETS GET THEM".

17 PLAINTIFF HAS STATED THAT DEFENDANTS HAVE FABRICATED THEIR REPORTS TO

18 MAKE PLAINTIFF OUT TO LOOK LIKE HE WAS BEHAVING IN A BELLIGERENT MANNER

19 Eg.; RESISTING DEFENDANTS DIRECT ORDERS, PHYSICALLY. PURSUANT TO RULE 34 OF

20 THE FED. R. OF CIV. P., PLAINTIFF REQUEST THAT DEFENDANTS R. LOZA, R. SINGH, D.

21 SANDOVAL PRODUCE FOR INSPECTION AND COPYING THE FOLLOWING: ALL 5 ANGLES OF

22 VHS VIDEO TAPE OF FEB 12, 2007 INCIDENT (Log NUMBER SVP-FCY-07-02-0105-) WHICH IS

23 STATED TO EXIST IN (Ex. A, CRIME INCIDENT REPORT) (SEE ID).

24 AFTER VIEWING VHS VIDEO TAPE OF FEB 12, 2007 INCIDENT (Log # SVP-FCY-07-02-0105),

25 WHICH PLAINTIFF WAS PROVIDED ON 4-5-07 (SEE ATTACHED HERE TO AS EXHIBIT)-

26 THE VIDEO TAPE WILL CLEARLY SHOW THAT PLAINTIFF DOES NOT VIOLENTLY BEGIN TO TWIST HIS

27 UPPER TORSO IN A LEFT AND RIGHT MOTION. (2) ALSO ONCE SLAMMED ON GROUND, PLAINTIFF

28 DOES NOT SWING HIS ELBOWS AND KICK HIS FEET, WHICH LOZA ALLEGES FORCES

(8.)

1  HIM TO PEPPER SPRAY DEFENDANT, RATHER IT WILL CLEARLY SHOW THAT
2  PLAINTIFF J. ROJAS IS ON THE GROUND IN AN UNRESISTIVE MANNER AND
3  THEN GETS SPRAYED BY DEFENDANT R. LOZA, THUS PROVING THAT
4  DEFENDANTS TESTIMONY/INCIDENT REPORTS ARE FAULTY AND IN QUESTION.

5

6  D. DEFENDANTS ARE THE PROXIMATE CAUSE OF PLAINTIFFS INJURIES.
7  WHEN PLAINTIFF WAS ESCORTED OFF YARD TO TAC C' HEALTH ANNEX, DEFENDANTS
8  R. LOZA AND D. SANDOVAL ASSAULTED PLAINTIFF WITH CLENCHED FISTS AND FEET
9  THERE WAS NO CAUSE FOR SUCH ACTION DUE TO (1) PLAINTIFF WAS UNRESISTIVE
10 IN HIS MANNER (2) PLAINTIFF WAS WAS UNDER RESTRAINTS, AND POSED NO
11 THREATS; ALSO PLAINTIFF WAS WELL OFF SITE OF ALLEGED PRISON DISTURBANCE.
12 DEFENDANTS ALLEGE THEY USED THE MINIMAL AMOUNT OF FORCE TO REGAIN CONTROL
13 OF PLAINTIFF WHEN ANY OTHER CORRECTIONAL OFFICER IN THEIR POSITION
14 WOULD CLEARLY HAVE BEEN PERCEIVED TO KNOW THEIR CONDUCT WAS UNLAWFUL
15 AND UNNECESSARY. TO PUNCH AND KICK AN INDIVIDUAL WHOSE HANDS ARE
16 TIED BEHIND HIS BACK AND CLEARLY SHOWING SIGNS OF NOT RESISTING OR
17 DISPLAYING ANY TYPE OF AGGRESSION IS MALICIOUS AND SADISTIC. THE DEFENDANTS
18 SOLE PURPOSE TO APPLY THAT TYPE OF USE WAS SIMPLY TO CAUSE HARM. FURTHER
19 MORE PLAINTIFF PRODUCES (EXHIBIT "A" PHINEAS DECL), WERE AN INMATE WAS
20 IN AN ADJACENT ROOM AND HAD A VIEW THROUGH A WINDOW WHICH HE SEEN
21 DEFENDANTS R. LOZA AND D. SANDOVAL ASSAULTING PLAINTIFF ALL WHILE PLAINTIFF
22 WAS IN AN UNRESISTIVE MANNER. PLAINTIFF FURTHER CONTENDS THAT HE
23 DID NOT GRAB DEFENDANT R. LOZA AS DEFENDANT ALLEGES, RATHER PLAINTIFF
24 WAS TAKING HITS FROM DEFENDANTS LOZA & D. SANDOVAL. ALSO THERE WAS A
25 "JOHN DOE" PRISON GUARD WHO DEEMED IT NECESSARY TO INTERVENE
26 IN DEFENDANT'S ASSAULT. SEE ROJAS DECL. (PHINEAS DECL IN DECL.). MOREOVER
27 PLAINTIFF MOTIONS THAT DEFENDANTS PRODUCE VHS VIDEOTAPE INTER-
28 VIEW WHICH WAS MADE FIVE DAYS LATER OF SAID INCIDENT BY

(9.)

1   A (LT. BARROGA) WHICH IN IT CLEARLY SHOWS PLAINTIFFS INJURIES

2   AFTER DEFENDANTS RELEASE AND D'SENSUAL ASSAULT, UNDER RULE 34 OF CIVIL

3   RULES P. ALSO TO ANSWER PLAINTIFFS INTERROGATORIES, UNDER FED. RULE CIV. P.

4   33, AND ANSWER PLAINTIFFS REQUEST TO ADMISSIONS UNDER FED. RULE CIV. P. 36

5   PLAINTIFF RESPECTFULLY REQUEST THAT THE COURT DISMISS DEFENDANTS MOTION

6   FOR QUALIFIED IMMUNITY, FOR DEFENDANTS ARE NOT ENTITLED TO QUALIFIED

7   IMMUNITY DUE TO DEFENDANTS VIOLATING A CONSTITUTIONAL RIGHT.

8

9   **II.** PLAINTIFF FOLLOWED PLRA'S REQUIREMENT TO EXHAUST ALL AVAILABLE

10                ADMINISTRATIVE REMEDIES.

11  A. LEGAL STANDARD

12  THE PLRA SAYS YOU MUST EXHAUST REMEDIES THAT ARE "AVAILABLE".

13  A REMEDY IS "AVAILABLE" IF IT HAS ANY "AUTHORITY" TO PROVIDE ANY

14  RELIEF OR TAKE ANY ACTION WHATSOEVER IN RESPONSE TO A COMPLAINT.

15  BOOTH V. CHURNER, 532 U.S. 731, 738. 121 S. CT. 1819, 1824, 149, L. ED. 2D 958, 965 (2001).

16

17  B. DEFENDANTS MOTION FOR DISMISSAL OF ALLEGING PLAINTIFF DID NOT EXHAUST ALL

18      AVAILABLE ADMINISTRATIVE REMEDIES SHOULD BE DISMISSED.

19  PLAINTIFF PRODUCED EXHIBIT "F" (SEE ID). TO SHOW THE COURT PLAINTIFF DID EVERYTHING

20  HE COULD, TO COMPLY WITH THE PRISON GRIEVANCE EXHAUSTION REQUIREMENT.

21  DEFENDANTS ALLEGE THAT ON MARCH 28, 2007 PLAINTIFF SUBMITTED GRIEVANCE

22  REGARDING FEB. 12, 2007 INCIDENT. (SEE MEDINA DECL. 5, EXB), AND WAS BY PASSED

23  THE INFORMAL LEVEL DUE TO THE EXCESSIVE FORCE ALLEGATIONS. ALSO ALLEGE THAT

24  APPEAL WAS SCREENED OUT FOR UNTIMELINESS BECAUSE IT WAS FILED FORTY-

25  FOUR DAYS AFTER THE INCIDENT AND WELL BEYOND THE FIFTEEN-WORKING DAY

26  REQUIREMENT UNDER THE CODE. (CAL. CODE REGS. TIT. 15, § 3084.6(C)) SEE (MEDINA DECL 5 EXB)

27

28

                              (10.)

1  Plaintiff submitted Appeal regarding Feb 12, 2007 incident, on Feb 28, 2007,
2  Was By Passed the informal level due to Excessive Force Allegations.
3  On March 28 2007 Plaintiff Recieved Appeal Along with (CDCR-695) Inmate/
4  Parole Appeal Screening Form. On (CDCR-695) There Were Comments written
5  By CC-II Appeals Coordinator Elsy Medina, stating: "Date of Alleged incident=
6  2/12/07, Date of original Appeal submission = 3/6/07". See Rojas Exhibit "F").
                                                          (I.D)
7  Plaintiff Re-submitted Appeal on 3-28-07, And inquired To CC-II Appeals
8  Coordinator E. Medina "What "602" He Was Refferring To? Rojas
9  Further Elaborates That He Submitted His Complaint Regarding 2/12/07 incident
10 On 2-28-07, And Has No "602" In His Possession That He Submitted on
11 3/6/07. He Also Asks E. Medina "If So What Is log number of Alleged
12 3/6/07 Appeal Plaintiff Submitted". On 4/10/07, Appeal Is Returned To
13 Plaintiff with No Response To His Inquires, Plaintiff Then Resubmitts
14 Appeal Same Day of 4/10/07, And Requests That His Grievance Recieve A
15 "Second level" Response (See Rojas Exhibit"F"). On 4/10/07 Plaintiff Recieves
                                        (I.D)
16 Grievance/Appeal  with Additional Comments From CCII E. Medina
17 Stating: "Time Constraints were not met on Your Appeal. The Appeal was
         "(sic)"
18 Sent To "Hiring" Authority For Review. The Appeal was Rejected For Time
19 Constraints. Do Not Resubmit Appeal Thankyou." (See Rojas Exhibit"F")
                                                         (I.D)
20 Plaintiff made Various Attempts To Exhaust His Second level of Response; Yet
21 Was Told By the Appeals Coordinator Medina Not Re-submit Appeal. Rojas
22 only Remaining option/Alternative Was To Resubmit His Appeal To The
23 Third level of Review, Being The Directors level; The Highest level, To Bring
24 About Some Type of Relief Exhaustion. Seeing That Plaintiff Was Not
25 Going To Recieve A Second level of Response DUE To Appeals Coordinator
26 Medina instructing Rojas Not To "Re-submitt Appeal". See Eg. Boyd V. Corr.
27 Corp. of Am., 380 F.3d 989,996 (6th Cir. 2004) (Holding That "Administrative Remedies Are
28 Exhausted when Prison officials Fail To Timely Respond To A Properly Filed Grievance

1  , "Though distinguishing a case where the prisoner could proceed without

2  a decision"); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2003)(non response

3  made remedy unavailable); Brookins v. Vogel, 2006 WL 3437482, AT *3 (E.D. Cal.

4  Nov. 28, 2006)(Holding that a prisoner who filed a grievance, got no response, and

5  was told it had never been received, and whose subsequent attempts were

6  rejected as untimely, had exhausted because he was "prevented from

7  complying with the exhaustion requirement"). In plaintiffs Rojas case,

8  He submitted his grievance in a timely manner as required by the

9  prison under the code (cal. code regs. Tit. 15 § 3084.6(c)), Also the plea's require-

10 ments. He's given a reply by the prison appeals coordinator that plaintiff

11 has not met time constraints; further alleging that he submitted an

12 appeal dated 3/6/07 as opposed to the 2/28/07 plaintiff contends to have submitted.

13 More over Rojas is continually screened out of second level and is told

14 not to resubmit appeal (see Rojas Ex. "I").

15 On defendants motion for qualified immunity, defendants submitted

16 a declaration of Eddy Medina CCII appeals coordinator of the S.V.S.P. See Decl.

17 of Medina S. Ex B). On declaration of Medina he states: "For CDC 602 Appeals that

18 meet criteria for review under California code of regulations, and have

19 been submitted for review, are recorded in the inmate appeals office

20 computer database. The recording is made at or near the time the inmate

21 appeal is received by me or another employee with personal knowledge of

22 the appeal process". Medina further states: "I have searched the

23 Salinas valley inmate appeals office's computer database for all

24 records of appeals filed by inmate Jahir Rojas, CDCR number P59734"

25 On the exhibits presented by Medina e.g.: (Printout of plaintiffs

26 appeals tracking system-level ① and ②), There is no mention of alleged

27 appeal submitted on the date of 3/6/07. California's Inmate Appeals

28 Process states: The informal level is bypassed for excessive force allega-

12.

1  -tions id §§ 3084 5(A)(3)(B), 3084.5(b)(a)(H), So Automatically Put Forth
2  To First Formal Level of Review. There should have been a Record
3  of Alleeeled Appeal Submitted 3/6/07 on Plaintiffs Printout. Medinas
4  Decleration, And Exhibits Are Contradictory To what he Stated To Plaintiff
5  on 3/28/07 when Rojas was Returned his Grievance See (Rojas Exhibit "F"/ (Id.)
6  Appeal Screening Form.) Plaintiff Did Comply With The Critical Inmate Appeals
7  Timing Requirements, Since Plaintiff Filed A Timely Appeal In Regards
8  To Said Incident Dated Feb 12, 2007. He Did Properly Exhaust His Administrative
9  Remedies, Accordingly Defendants Motion To Dismiss For Failure To File In A
10  Timely Manner And Failure To Exhaust Administrative Remedies Should Be
11  Dismissed. Under Perkins v. Obey, 2005 WL 433589, At *4 (S.D.N.Y. Feb. 23, 2005),
12  (Holding The Absence Of A Computer Record Did Not Establish Non-Exhaustion,
13  Since It Could Reflect The Failure To Make A Record); See Also Amaker v.
14  Goord, No. 98 Civ 3634 (JGK), 1999 WL 511990, * At *4-5 (S.D.N.Y. July 20, 1999)
15  (unpublished) Holding That A General Assertion Of Exhaustion In Response
16  To A Motion To Dismiss was Sufficient In The Absense Of A Record In-
17  Dicating What Grievance The Plaintiff Had Filed And what Has Happen To
18  Them). In Regards To Rojas Exhaustion Of Grievance, He was Told By CII
19  Appeals Coordinator Not To Re-Submitt His Appeal After Submitting It Twice
20  For A Second Level Of Response. Rojas Only Remaining Alternative Then,
21  Was To Submitt Grievance To The Third Level Of Review, Being Highest
22  Level Of Review. See Rainge-El v. Moschetti, 2006 WL 1980287, At *1
23  (D. Colo. July 12, 2006) (Questioning Woodfords Applicapbility where The Plaintiff
24  "Did Not Entirely Ignore The Prison's Administrative Grievance Machinery").
25  See Also Robinson v. Dept of Corr., No. 96 Civ 8290 (MBM), 1998 WL 883301, At *4 (S.D.N.Y.
26  Dec. 17, 1998) (unpublished) (Holding Allegation Of Lack of Remedies was Sufficient At Screening
27  Stage). Moreover See Brown v. Valoff, 422 F.3d 926, 935 (9th cir. 2005) (Holding "A Prisoner
28  Need Not Press on To Exhaust Further Levels Of Review once He Has Either Recieved All

15.

1  available remedies at an intermediate level of review or been reliably informed
2  by an administrator that no remedies are available") Plaintiff Rojas was
3  instructed not to re-submitt grievance by a Prison Administrator
4  Yet Rojas res-submitted Plaintiff hopes the court will acknowledge
5  Rojas did all that was reasonable to exhaust his administrative remedies.
6  Plaintiff further moves to request for production of documents Pursuant
7  to Rule 34 of the federal rules of civil Procedure: Requests that Defendants
8  R. Loza, R. Singh, and D. Sandoval Produce for inspection and copying the following
9  documents: Inmate/Plaintiff Isolation Log Book that is utilized to record
10  the movement and activities of inmate/Plaintiff, in isolation Log Book it
11  will show that Plaintiff J. Rojas was housed in administrative Segregation
12  Unit Delta Two, Cell-# 111, from Feb. 12, 2007 up to the time he is re-
13  housed to D-9-ad-seg. During Plaintiffs occupation in D.2-ad-seg-cell# 111,
14  it will show on the isolation Log Book, that on or around the months
15  of April, May, June of 2007, Plaintif J. Rojas was Pulled out of his cell
16  # 111, for his Second Level of review regarding Feb 12, 2007 incident, (
17  incident Log # SVP-FLY-07-02-0105-), By a SGT. Prison official. the SGT. had in
18  his possession a copy of grievance regarding FEB.12, 2007 incident,
19  Bearing institutional Log number: SVP-D-07-0138X (appeal). Plaintiff
20  inquired to SGT. "What the Purpose of this hearing was regarding?"
21  the SGT. Response was that "He was Hear for Plaintiffs "Second level
22  of Review". Plaintiff Explained to SGT. that his Appeal Had Already Been
23  Sent to the "Third Level".
24  Plaintiff at this Time Cannot Give a Specific date to the court
25  when he was Pulled out of his cell in ad-seg-D.2-#111, for his
26  Second Level of review, However when he Recieves afformentioned
27  documentation he's Requested from Defendants, he will be
28  able to do so.

(19)

## Conclusion

Plaintiff Jahir A. Rojas has established a genuine issue of material fact with respect to his allegations that defendants were in clear violation to Plaintiffs Constitutional Rights, and are the proximate cause to his injuries. Moreover defendants are not entitled to qualified immunity as a matter of law, accordingly defendants motion for dissmissal, and motion for qualified immunity, should be denied.

Dated 8-21-08

Respectfully Submitted,

_Jahir A. Rojas_

Jahir Alberto Rojas.  In Pro Per

(15)

JAHIR ALBERTO ROJAS    P58734
C.S.P. CORCORAN 4A4R #13
P.O. BOX 3476
CORCORAN, CA. 93212-3476
   PLAINTIFF, IN PROPER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA
    - SAN FRANCISCO DIV. -

CASE NO. CO7-4662 MMC. (PR)
PLAINTIFF NO.2. MOTION FOR APPOINTMENT
OF COUNSEL.

JAHIR ALBERTO ROJAS

              PLAINTIFF,

VS.

R. LOZA, ETAL.,

              DEFENDANTS

          PURSUANT TO 28 U.S.C. § 1915(e)(1) PLAINTIFF MOVES
FOR AN ORDER APPOINTING COUNSEL TO REPRESENT HIM IN THIS CASE.
IN SUPPORT OF THIS MOTION PLAINTIFF STATES:

(1). PLAINTIFFS UNABLE TO AFFORD COUNSEL; HE HAS REQUESTED LEAVE TO
PROCEED IN FORMA PAUPERIS.

2). PLAINTIFF'S IMPRISONMENT WILL GREATLY LIMIT HIS ABILITY TO LITIGATE.
THE ISSUES INVOLVED IN THIS CASE ARE COMPLEX, AND WILL REQUIRE
SIGNIFICANT RESEARCH AND INVESTIGATION. PLAINTIFF HAS LIMITED ACCESS
TO LAW LIBRARY DUE TO BEING IN SPECIAL HOUSING UNIT; AND LIMITED
KNOWLEDGE OF THE LAW.

3). A TRIAL IN THIS CASE WILL LIKELY INVOLVE CONFLICTING TESTIMONY, AND COUNSELOR
WOULD BETTER ENABLE PLAINTIFF TO PRESENT EVIDENCE AND CROSS EXAMINE WITNESSES.

4). PLAINTIFF LACK OF KNOWLEDGE OF THE LAW IS LIMITING HIS ABILITY TO FULLY
RESPOND TO DEFENDANTS MOTIONS FOR DISMISSAL, WHERE COUNSEL WOULD
BETTER ENABLE A RESPONSE IN PRESENTATION OF PLAINTIFFS OPPOSITION.

WHEREFORE, PLAINTIFFS REQUEST THAT THE COURT APPOINT A CIVIL RIGHTS LAWYER
WHO WOULD TAKE THIS CASE ON A CONTINGENCY FEE, A MEMBER OF THE CALIFORNIA
BAR, AS COUNSEL IN THIS CASE.    DATE 8-21-08    SIGNATURE

                                              JAHIR ROJAS, PLAINTIFF IN PROPER

# EXHIBIT A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C- STAFF REPORT
CDCR 837-C (Rev. 07/05)

PAGE __1__ OF __5__

| INCIDENT LOG NUMBER |
|---|
| SVP-FCY-07-023-0105 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Henley | S | M | 02/12/07 | 1515 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| ▓▓▓ | Security Squad Officer # 2 | 12 YR. 3 MO. | 02/13/07 | Facility "C", Yard Two |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| S/S/H | 0730/1600 | Attempted Battery on Peace Officers/ Battery on an Inmate W/SBI | 3005 (c) | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) | |
|---|---|---|---|---|
| ☒ PRIMARY | Sgt. T. Allen | | Ruiz, T-28483 | C6-216 (S) |
| ☐ RESPONDER | C/O P.B. Rivera | | Rojas, P-58734 | C5-204 (S) |
| ☐ WITNESS | | | Phineas, V-13124 | C5-122 (S) |
| ☐ VICTIM | | | Gonzalez, F-35367 | C6-206 (S) |
| ☒ CAMERA | | | Garcia, F-10204 | C6-130 (S) |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | | CHEMICAL AGENTS USE BY YOU | |
|---|---|---|---|---|---|
| ☐ WEAPON | | NO: | NO: TYPE: | | TYPE: |
| ☐ PHYSICAL | ☐ MINI-14 ___ | ☐ 37MM ___ | | ☒ OC | Sabre 5.0 |
| ☒ CHEMICAL | ☐ 9 MM ___ | ☐ 40 MM ___ ___ | | ☐ CN | |
| ☐ NONE | ☐ 38 CAL ___ | ☐ L8 ___ ___ | | ☐ CS | |
| **FORCE OBSERVED BY YOU** | ☐ SHOTGUN ___ | ☐ 40 MULTI ___ ___ | | ☐ OTHER: | |
| ☒ WEAPON | | ☐ HFWRS | | | |
| ☒ PHYSICAL | ☒ N/A | ☐ BATON | | ☐ N/A | |
| ☒ CHEMICAL | | | | | |
| ☐ NONE | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES | Weapons, VHS Video tape | ISU Evidence Locker 02 (a) & (b) | ☐ YES | ☐ YES |
| ☐ NO | Digital photographs, Three rolls | ISU Film Evidence Locker (Feb 07) | ☒ NO | ☒ NO |
| | ☐ N/A 35mm film. | ☐ N/A | | |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY ☒ N/A | ☐ YES |
| ☒ NO | | | ☐ UNKNOWN | ☒ NO |
| | ☒ N/A | ☒ N/A | ☐ OTHER: _____ | |

**NARRATIVE:**

On February 12, 2007, at approximately1515 hours, while performing my job duties as Security Squad Officer # 2, a Code Two on Facility "C", Yard Two was announced via institutional radio, at which time Officer P. B. Rivera and I responded to Facility "C", Yard Two. Upon my arrival I saw approximately ninety (90) Southern Hispanic inmates in a prone position to the right of the dirt track, facing Building C-6 and approximately sixty (60) Black inmates in a prone position near Building C-6, Mini Yard, facing the Southern Hispanic inmates. Responding staff formed a skirmish line along the dirt track just behind the Southern Hispanic inmates. A systematic yard recall was initiated starting with the Southern Hispanic inmates. Southern Hispanic inmates located directly in front of the skirmish line were order to crawl backwards towards staff, prone out and submit to handcuffs. While providing security coverage for the arrest teams I noticed an unidentified inmate, (later identified as Inmate Ruiz, T-28483, C6-216U) take an unknown object (suspected weapon) remove a white piece of paper from this object and then throw the object behind him. Additional staff also saw Ruiz' actions, at which time Ruiz was order to crawl backwards towards staff and submit to handcuffs. Ruiz complied with staff's orders, was placed in handcuffs and escorted from the yard to a temporary holding cell. Inmate Rojas, P-58734, C5-204L, was then instructed to crawl backwards towards staff, at which time Rojas complied, however after crawling half way to the skirmish line Rojas stood up and started walking

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| *[signature]* | C/O | ▓▓▓ | 02/13/07 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

| PAGE 2 OF 5 | INCIDENT LOG NUMBER SVP-FCY-07-02-0105 |
|---|---|

| NAME: LAST Henley | FIRST S | MI M |
|---|---|---|

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:

towards the skirmish line, staff ordered Rojas to get down and crawl back towards staff. The remaining Southern Hispanic inmates that were still proned out in front of the skirmish line had turned their heads towards staff and watched staff as we continued to give Rojas direct orders to prone out and crawl backwards towards staff. Inmate Rojas did comply with staffs orders however when he was handcuffed and brought to his feet by escorting staff he resisted. I then stepped forwards and instructed Inmate Garcia, F-10204, C6-130, to remain in a prone position. Garcia then stated "Fuck this shit, lets get them". At which time Inmate Garcia, Inmate Gonzalez, F-35367, C6-206, and Inmate Phineas, V-13124, C5-122, all jumped up and ran towards the skirmish line as soon as they stood up the remaining Southern Hispanic inmates (approximately 31) also stood up and ran towards the skirmish line.

Inmate Garcia ran directly towards me, at which time I ordered Garcia to get down. Garcia refused to comply with my orders and continued to run towards me. I then utilized my state issued MK-9 Sabre 5.0 striking Garcia in the upper chest and face. As Garcia continued to advance towards me I continued to utilize my MK-9 until it was exhausted. I then stepped to my right and drew my state issued Monadnock Expandable Baton (MEB), utilizing the cross draw open to the ground to the vertical carry position. I then heard the 37mm fired and Inmate Garcia stopped advancing towards me, grabbed his shirt pulling it over his head and disappearing into the chemical agents. Staff continued to give all the involved Southern Hispanic inmates orders to get down. After approximately one minute all the involved Southern Hispanic inmates proned out and again a systematic yard recall of the Southern Hispanic inmates was initiated. Staff identified inmates that had received injuries and removed them from the yard. These inmates were taken to medical staff on Facility "C" where medical treatment was provided for injuries they sustained during their attempted assault on staff.

While continuing with the systematic yard recall, I saw several unidentified Black inmate attack one unidentified Black inmate near Building Eight, Mini Yard wall.

Once the second incident was controlled and the involved inmates were placed into handcuffs, the skirmish line staff moved towards the center of the yard. At which time, I conducting a cursory search of the area I saw Inmate Ruiz, T-28483, throw the unknown item.(suspected weapon). While searching this area I found a inmate manufactured weapon made of melted white and black plastic sharpened to a point, attached with white and black string to a white hollow plastic handle. The weapon measured approximately five (5") inches in length and approximately a half of an inch(1/2") wide at it's widest point. I placed the weapon in an evidence tube, keeping it in my possession.

Upon completion of the cursory search of the area the skirmish line began the systematic yard recall of the involved Black inmates. Two arrest teams were formed and these teams instructed one inmate at a time to crawl backwards to staff, prone out and submit to handcuffs. All the involved black inmates

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # | ID # | DATE 02/13/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE / / |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

PAGE __3__ OF __5__

INCIDENT LOG NUMBER
SVP-FCY-07-02-0105

| NAME: LAST | FIRST | MI |
|---|---|---|
| Henley | S | M |

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:

complied with these orders and were identified and escorted back to their assigned cells. A cursory search of the grass area in front of Building Six was conducted with negative results for weapons.

I then returned to the area that the Southern Hispanic inmates were proned out in and searched that area again for any possible weapons that may have been secreted in the dirt. While searching the grass area in front of Dining Hall # 3 (Between Building Five and Building Six) I turned over a piece of bread and saw a long piece of blue state sheet material, I pulled on the blue fabric and secreted within the dirt was a inmate manufactured weapon. This weapon was manufactured out of a broken piece of a green state issued cup, sharpened to a point with a handle manufactured out of cardboard, tied with the long strip of blue and white fabric. The weapon measured approximately three and a half (3 1/2") inches in length and approximately one (1") inch in width. I placed this weapon into an evidence tube and kept it in my possession. The search for any remain weapons was suspended due to unfavorable lighting conditions.

Upon completion of the weapon search, Sergeant T. Allen, Facility "C" Two Yard Sergeant, relinquished one VHS video tape recovered from Facility "C", Yard Observation Two, to me. At which time I marked the VHS tape with the time, date and incident log number placed it in an evidence bag and retained it in my possession.

Upon my return to the Investigative Services Unit (ISU) I secured the weapons recovered from Facility "C", Yard Two into the ISU Evidence Locker # 02 (a).

The VHS video tape was secured in the ISU Evidence Locker 02 (b).

On February 13, 2007, at approximately 0830 hours, ISU staff returned to Facility "C", Yard Two, to process the crime scene. I was assigned to take 35mm photographs of the Facility "C", Yard Two. The photograph are as follows:
Roll # 1
1. Over all view from Facility "C" Patio viewing a partial view of Facility "C" Two Yard and Building Five.
2. Over all view of the "C"Gym to Building Five's Dining door, from the patio gate door.
3. Over all view of Building Five to Building Six, from the patio gate door.
4. Over all view of Building Six Mini Yard to Building Seven, from the patio gate door..
5. Over all view of Building Seven to Building Eight, from patio gate door.
6. Over all view of Building Five and Building Six, showing crime scene area marked with yellow tape.
7. Over all view of two yellow flags indicating locations of two weapons discovered during the yard search. first flag marked # 1, was were the weapon Ruiz. T-28483. threw during incident was discovered.

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # | ID # | DATE 02/13/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE / / |

STATE OF CALIFORNIA                                                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

| | |
|---|---|
| PAGE __4__ OF __5__ | INCIDENT LOG NUMBER ·SVP-FCY-07-02-0105 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| Henley | S | M |

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:

35 mm Photographs continued:

8.  Mid range view of yellow flag marked # 2, indicating location of second weapon.
9.  Over all view of Building Six Mini Yard to light pole, indicating area Black inmates were proned out in.
10. Over all view of Building Seven, Mini Yard to Building Eight, Dining door.
11. Over all view of Building Eight and the table in front of Building Eight.
12. Over all view of table located in front of Building Eight to Building Eight's, Mini Yard door. (incident Site, Battery on an Inmate) .
13. Over all view from the table in front of Building Eight, showing two yellow flags indicating Mini 14 impact site.

Roll # 2

1.  Over all view from yellow flag marked # 2, to C-2 Yard Observation.
2.  Mid range view from yellow flag marked # 2, to C-2 Yard Observation.
3.  Over all view from yellow flag marked # 1, to C-2 Yard Observation.
4.  Mid range view from yellow flag marked # 1, to C-2 Yard Observation.
5.  Over all view of cone 3 and 4 below C-2 Yard Observation, showing location of Mini 14 shell casings.
6.  Mid range view of cone 3 and 4 below C-2 Yard Observation, showing location of Mini 14 shell casings.
7.  Over all view from C-2 Yard Observation to Building Eight (location of second Incident, Battery On Inmate).
8.  Mid range view from C-2 Yard Observation to yellow flags, indicating location of Mini 14 impact site.
9.  Mid range view from C-2 Yard Observation to cones 3 and 4, indicating location of Mini 14, shell casings.
10. Close up view of cones 3 and 4, indicating location of Mini 14, shell casings from C-2 Yard Observation.
11. Over all view of cones 1 and 2, indicating location of recovery of one 40 mm, direct impact round.
12. Close up view of cone 1, indicating location of recovery of one 40 mm, direct impact round.

Roll # 3

1. Close up view of cone 2, indicating location of recovery of one 40 mm, direct impact round.
2. Over all view from Yard Camera # 2 to incident site.
3. Close up view from Yard Camera # 2 to incident site.
4. Over all view of weapon # 1, with lead card, identified by staff as being thrown by Inmate Ruiz, T-28483.

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # | ID # | DATE 02/13/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE / / |

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)              PAGE __5__ OF __5__      | INCIDENT LOG NUMBER
                                                              | .SVP-FCY-07-02-0105

| NAME: LAST |  | FIRST |  | MI |
|---|---|---|---|---|
| Henley |  | S |  | M |

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:
Roll # 3, 35 mm Photographs continued:

 5.  Over all view of weapon # 1 with lead card and measurement scale.
 6.  Mid range view of weapon # 1, with measurement scale.
 7.  Over all view of weapon # 2, uncontrolled, located in the grass in front of Dining Hall # 3.
 8.  Over all view of uncontrolled weapon with measurement scale.
 9.  Mid range view of uncontrolled weapon with measurement scale.
10.  Close up view of uncontrolled weapon with measurement scale.
11.  Lead Card.
12.  Lead Card.
13.  Lead Card.


Upon completion of the photographs I returned to the Investigative Service Unit and secured three(3)
roll's of 35 mm film into the ISU Film Evidence Locker (February 2007).

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
|  | C/O |  |  | 02/13/07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
|  |  |  |  | /    / |

EXHIBIT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT

JAHIR ALBERTO ROJAS

PLAINTIFF

V

OF   R. LOZA, D. SANDOVAL

.DEFENDANTS

:.DECLARATION
:BUD PHINEAS
:CIVIL ACTION NO.

BUD PHINEAS HERE BY DECLARES: THAT ON OR ABOUT THE DATE OF 2·12·07, I WAS IN SALINAS VALLEY STATE PRISON C YARD HEALTH ANNEX/HOBBY SHOP WHEN I SEEN THE AFFORMENTIONED DEFENDANTS ASSAULTING PLAINTIFF ROJAS, WHILE PLAINTIFF WAS UNDER RESTRAINTS (PLASTIC FLEX CUFFS) I WAS IN A HOLDING CAGE THAT WAS FACING DIRECTLY ACROSS A OFFICE NEXT TO THE OFFICE IS A WHITE WALL THAT WAS ALSO IN MY VIEW. THAT'S WERE I SEEN DEFENDANTS RAM PLAINTIFF UNTO, AND BEGAN STRIKING PLAINTIFF WITH THEIR FISTS TO PLAINTIFF'S UPPER TORSO. ALTHOUGH MY VIEW WAS LIMITED WHEN PLAINTIFF WAS SWUNG TOWARDS THE LEFT OF MY VIEW BY DEFENDANTS, I HEARD FURTHER COMMOTION FROM THE ASSAULT. I SEEN AN ADDITIONAL 4 (CORRECTIONAL OFFICER) COME INTO VIEW THEN MOVE OUT TO THE LEFT OF MY VIEW. I ALSO HEARD SOMEONE YELL OUT "NOT RIGHT HERE STUPID MOTHERFUCKERS" DO NOT KNOW WHO, DUE TO THE AFFORMENTIONED PEOPLE WERE BY THAT TIME OUT OF MY RANGE OF SIGHT.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED AT SOLEDAD CALIFORNIA [ 07 ] ~~~~~~~~~~
            SIGNATURE

EXHIBIT: H

# EXHIBIT B

-- EXHIBIT --

Salinas Valley State Prison

**CALIFORNIA DEPARTMENT OF CORRECTIONS**
**Inmate/Parolee Appeals Tracking System - Level I & II**

**Appeal Listing**

05/28/2008

Sorted By: CDC Number

| CDC Number | Appellant Name | Area Of Origin | Issue | Log Number | Group Appeal |
|---|---|---|---|---|---|
| P58734 | ROJAS, J | R&R | PROPERTY | SVSP-C- | |
| Informal Review: | Received: 07/06/2004 | Due: | Completed: 08/12/2004 | Disposition: WITHDRAWN | |
| P58734 | ROJAS, J | FAC. C 5 | PROGRAM | SVSP-C- | |
| Informal Review: | Received: 10/05/2006 | Due: 10/20/2006 | Completed: 10/20/2006 | Disposition: DENIED | |
| P58734 | ROJAS, J | FAC. C 5 | MEDICAL | SVSP-C- | |
| P58734 | ROJAS, J | FAC. C 5 | MEDICAL | SVSP-C- | |
| P58734 | ROJAS, J | FAC. D 2 | STAFF COMPLAINTS | SVSP-D- | |
| P58734 | ROJAS, J | FAC. D 2 | STAFF COMPLAINTS | SVSP-D-07-01389 | |
| Level I Review: | Received: 03/28/2007 | Due: 05/09/2007 | Completed: 04/24/2007 | Disposition: SCREENED OUT | |
| P58734 | ROJAS, J | D9 AD-SEG | PROPERTY | SVSP-D-07-03845 | |
| Level I Review: | Received: 08/28/2007 | Due: 11/02/2007 | Completed: 10/24/2007 | Disposition: GRANTED IN PART | |
| P58734 | ROJAS, J | D9 AD-SEG | SEGREGATION HEARINGS | SVSP-D-07-04084 | |
| Level I Review: | Received: 09/14/2007 | Due: 10/29/2007 | Completed: 09/27/2007 | Disposition: GRANTED IN PART | |

Total: 8

Page: 1

Inmate Appeals Branch

05/28/2008

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
Inmate / Parolee Appeals Tracking System - Level III

**Appellant Appeal History**

**CDCR Number: P58734**

— EXHIBIT —

Sorted By: CDCR Number

| CDCR Number | Appellant Name | Location | Arrival Date | Alerts (Type, Start, End) | Special Needs |
|---|---|---|---|---|---|
| P58734 | ROJAS, JAHIR | COR | 01/11/2008 | | |

**Accepted Appeals**

| IAB Number | Issue | Issue Subcategory | Accepted Date | Inst. Log Number | Due Date | Closed Date | Disposition |
|---|---|---|---|---|---|---|---|
| 0311269 | DISCIPLINARY | Prior to subcategory | 04/21/2004 | CAL-03-01281 | 07/16/2004 | 07/12/2004 | DENIED |

**Screen Outs**

| IAB Number | Issue | Issue Subcategory | Received Date | Inst. Log Number | Screened Out | Response Due | Reason |
|---|---|---|---|---|---|---|---|
| 0311269 | DISCIPLINARY | Prior to subcategory | 03/11/2004 | CAL-03-01281 | 03/11/2004 | | MISSING DOCUMENTATION |
| 0708955 | STAFF COMPLAINTS | Prior to subcategory | 09/14/2007 | SVSP-07-01389 | 10/25/2007 | | APPEAL REJECTED/WITHDRAWN/C-AN |
| 5038226 | STAFF COMPLAINTS | Prior to subcategory | 05/02/2007 | SVSP-07-01389 | 05/02/2007 | | MUST BE COMPLETED THROUGH 2ND LEVEL |

Page: 1

STATE OF CALIFORNIA     EXHIBIT     DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C      PAGE __1__ OF __3__

| CDC NUMBER P-58734 | INMATE'S NAME Rojas | LOG NUMBER C07-02-0023 | INSTITUTION SVSP | TODAY'S DATE 09-05-07 |
|---|---|---|---|---|

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐I.E. REPORT | ☐OTHER |
|---|---|---|---|---|---|

**Hearing:** Hearing commenced on 09-05-07 at 1117 hours, but was postponed in order to allow 24 hour preparation time after viewing the video tape. Hearing reconvened on 09-06-07.

**Inmate's Health:** Inmate Rojas stated that his health was well and that he was prepared to proceed with the hearing. I introduced myself as the SHO and explained the hearing procedures.

**MHSDS:** Inmate Rojas is **not** a participant in the Mental Health Services Delivery System.

| | |
|---|---|
| Date of discovery: 02-12-07 | Initial RVR copy issued on: 02-23-07 |
| Hearing Completed on: 09-05-07 | Last document issued to inmate on: 02-27-07 |
| D.A. Postponed date: 02-23-07 | Date D.A. results issued: 08-21-07 |

**Time Constraints:** All time constraints were met. Inmate Rojas was provided a copy of the CDC Form 115 within 15 days after the discovery of information leading to the charges. Hearing was held within 30 days of the date the inmate was provided a copy of the CDC Form 115. Inmate Rojas acknowledged receiving all documents used for this hearing 24 hours prior to the hearing.

**Staff Assistant (SA):** Inmate Rojas (has GED) does not meet the criteria for the assignment of a staff assistant per CCR§ 3315.

**Investigative Employee (IE):** Inmate Rojas requested and does meet the criteria for the assignment of an Investigative Employee per CCR§ 3315. Officer M. Lukas was assigned. Officer Lukas interviewed Inmate Rojas as a part of the investigative process, gathered information from witnesses, asking each witness specific questions posed by Inmate Rojas and follow up questions posed by the IE for clarification purposes. Office Lukas prepared his report, to include his summation of the facts, and provided a copy of the report to Inmate Rojas more than 24 hours prior to this hearing.

**D.A. Referral:** This matter was referred to the Monterey County Attorney's Office. On 02-23-07, Inmat Rojas requested that the hearing be postponed pending outcome of the referral for prosecution. On 08-22-07, a memorandum was received from the Monterey County District Attorney's Office informing that the case had been rejected for prosecution.

**Evidence Requested or Used:** Video tape evidence was used in the adjudication of this RVR.

**Video or Photo Evidence:** On 09-05-07, Inmate Rojas viewed the video tape of the incident and the hearing was postponed to afford him 24 hour preparation time as noted by his signature on the RVR CDC 115.

**Inmate Plea and Statement:** Inmate Rojas entered a plea of "Not Guilty", stating, "Everything he's saying is a fabrication. I didn't swing or grab him. How could I grab him, my thumbs were pointing up?."

**Witnesses Requested or Provided:** Inmate Rojas requested Inmates Zamora (T-37736), Phineas (V-13124), Rivera (H-92028), Felix (P-21955), Mosqueda (K-35661), Herrera (J-15446), Briceno (K-91638), Garcia (P-77075) as witnesses for the hearing. SHO asked Inmate Rojas what questions he can ask of these witness.

Inmate Rojas provided the following questions:
   1)  Where were you positioned when Inmate Rojas (P-58734) was being placed in flex cuffs?
Inmate Rojas stated these inmates would state they were facing in his direction. SHO agrees the inmate witnesses would state that they were facing in his direction.

| SIGNATURE OF WRITER R. Parin | TITLE Correctional Lieutenant | DATE NOTICE SIGNED 9/6/07 | |
|---|---|---|---|
| COPY OF CDC-115-C GIVEN TO INMATE ☒ | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: 10/1/07 | TIME SIGNED: 1840 |

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C                        PAGE __2__ OF __3__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-58734 | Rojas | C07-02-0023 | SVSP | 09-05-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐LE .REPORT | ☐OTHER |
|---|---|---|---|---|---|

2) When C/O's lifted me off the ground did I begin to move my upper torso in a left and right motion?
Inmate Rojas stated the inmate witnesses would state he did not move his upper torso in a left and right motion when the C/O's lifted him up off the ground, SHO agrees inmate witnesses would state that he did not move his upper torso in a left and right motion when the C/O's lifted him off the ground.

Based on the inmate's questions and stipulated responses, SHO determined it not necessary to call the listed witnesses to the hearing.

Inmate Rojas requested to view all angles of the video footage of cameras on Yard #2. SHO advised Inmate Rojas that he viewed the footage of the incident on 09-05-07. Inmate Rojas stated there are five cameras on Yard #2.

SHO called Sergeant M. Nilsson, Facility "C" yard sergeant as a witness.

**Witness Testimony at Hearing:** SHO asked Sergeant Nilsson the procedures for processing video tape evidence of incidents on the exercise yard.

Sergeant Nilsson stated the video tapes are reviewed after incidents and any footage discovered is processed into evidence per SVSP procedures.

**Classification Referral:** Referred to ICC for program review.

1) Where were you positioned when Inmate Rojas (P-58734) was being placed in flex cuffs?
Inmate Rojas stated these Inmates would state they were facing in his direction. SHO agrees inmate witnesses would state that they were facing in his direction.
2) When C/O's lifted me up off the ground did I begin to move my upper torso in a left and right motion?
Inmate Rojas stated the inmate witnesses would state he did not move his upper torso in a left and right motion when the C/O's lifted him up off the ground. SHO agrees inmate witnesses would state that he did not move his upper torso in a left and right motion when the C/O's lifted him off the ground.

**Confidential Information:** Confidential information was not used in the adjudication of this 115.

**Findings:** Inmate Rojas is found **guilty** of the charged offense of violating CCR§ 3005(c); for the specific act of, "Battery on a Peace Officer," a Division "B" offense (CCR§ 3323(d)(1)). The evidence used to render this finding included:

1.) Rules Violation Report authored by Correctional Officer R. Loza, which states in part, "On Monday, February 12, 2007, at approximately 1515 hours...I responded to a disturbance on the Facility "C" Yard exercise yard..All inmates were compliant with staff instructions to crawl backwards towards the skirmish line...until we reached Inmate Rojas, (P-58734, C5-204)...Rojas refused several direct orders to remain prone and began advancing towards staff with clenched fists. After several orders to stop and assume a prone position on the ground, Rojas complied...During the escort, Rojas began violently twisting his upper torso, swinging his elbows wildly left to right...Rojas continued to violently swing his elbows, striking me on the right side of my rib cage, with his left elbow...I placed both my hands on his upper back area to gain the leverage necessary to force Rojas onto the ground in a prone position. Once on the ground, Rojas began shouting, 'Get them!'..."

2.) The Crime/Incident Report c-1 Supplemental Log# SVSP-FCY-07-02-0105. authored by Officer R. Loza.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| R. Parin | | Correctional Lieutenant | 9|6|07 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
| ☑ | M. L | 10/1/07 | 1800 |

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C    PAGE ___3___ OF ___3___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-58734 | Rojas | C07-02-0023 | SVSP | 09-05-07 |

| ☐SUPPLEMENTAL | ☐CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☒HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

**Conclusion:** Based on the RVR, incident reports and 7219 medical evaluations, this SHO finds the preponderance of the evidence has been met to render and sustain a finding of guilt on the charged offense of violating CCR§ 3005(c); specifically, "Battery on a Peace Officer," a Division "B" offense (CCR§3323 (d)(1)). After viewing the video tape, SHO was unable to observe Inmate Rojas assault staff due to the camera view being an overall view of the yard. The Reporting Employee, Officer Loza and Officer Sandoval clearly describe Inmate Rojas' resistive and assaultive actions during the escort to the Health Annex holding cell. SHO did observe Inmate Rojas on video tape footage of incident clearly get up from the prone position and approach the skirmish line, which necessitated several staff members to respond to his location, simultaneously the remaining inmates in the prone position got up and advanced towards the skirmish line.

**Additional Disposition:** None.

**Enemy Concerns:** There are no enemy concerns related to this disciplinary hearing.

**Appeal Rights:** Inmate Rojas was advised that the disposition of this Rules Violation Report would not become final until approved by the Chief Disciplinary Officer at which time he will receive a final copy of the completed CDC-115. He was also advised of his rights to appeal the findings of this hearing, the methods of appealing, and credit restoration rights pursuant to CCR§ 3327 & 3328, governing the restoration of forfeited credits.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| R. Parin | | Correctional Lieutenant | 9 6 07 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
| ʀ | | 10/1/07 | 185 |

LEGAL MAIL

4A-HR-13R C.
P.O. Box 3476 CORCORAN CA.
— 93212-3476 —

RECEIVED

AUG 2 5 2008

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE HONORABLE MAXINE M. CHES
STATES DISTRICT JUDGE U.S. DI
HOUSE, ATTN: CLERKS OFFICE.
450 GOLDEN GATE
FLOOR. SAN FRANCI
— 94102 —