IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAHIR ALBERTO ROJAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. LOZA, Correctional Officer, R. SINGH, Correctional Officer, D. SANDOVAL, Correctional Officer,<br><br>　　　　Defendants.<br>_____ | No. C 07-4662 MMC (PR)<br><br>**ORDER DENYING MOTION TO DISMISS; DENYING MOTION TO STAY DISCOVERY; DIRECTING DEFENDANTS TO FILE MOTION FOR SUMMARY JUDGMENT OR INFORM COURT CASE CANNOT BE RESOLVED BY SUMMARY JUDGMENT**<br><br>**(Docket Nos. 14 & 23)** |

On September 10, 2007, plaintiff, a California prisoner incarcerated at Salinas Valley State Prison ("SVSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. On April 28, 2008, the Court ordered plaintiff's complaint served on three SVSP employees alleged to have violated plaintiff's Eighth Amendment right to be free from the use of excessive force.

Now before the Court is defendants' motion to dismiss, in which they argue the action cannot proceed because plaintiff failed to exhaust his administrative remedies before filing suit, or, alternatively, because defendants are entitled to qualified immunity. Plaintiff has opposed defendants' motion, and defendants have filed a reply. Additionally, defendants have filed a motion to stay discovery pending the Court's ruling on the motion to dismiss.

//

//

**FACTUAL BACKGROUND**

In his complaint, plaintiff makes the following allegations with respect to events that occurred at SVSP. On February 12, 2007, plaintiff was on the yard when an announcement was made from the yard tower for all inmates to "prone out" on the ground. In response, correctional officers began to form a "scrimmage line" and directed the inmates to crawl backwards toward the line to be handcuffed. (Compl. ¶ 1.) When it came time for plaintiff to crawl backwards, he yelled out that he could not do so because of an injured right knee. (Compl. ¶ 2.) Plaintiff attempted to stand up to walk the estimated seventy feet to the line to be handcuffed. In response, correctional officers instructed plaintiff to get down and crawl backwards. Plaintiff complied, but continued to plead that he could not crawl because of his right knee. (Compl. ¶ 3.) Correctional officers then instructed plaintiff to lie on his stomach and place his hands on his sides. Plaintiff complied with the request. Nevertheless, defendant correctional officer R. Loza ("Loza") aggressively thrust his knee into plaintiff's back, causing plaintiff to lose his breath. Loza next placed plastic flexicuffs on plaintiff and, in so doing, caused the flexicuffs to dig into plaintiff's wrists and restrict the blood flow to his hands. Loza then lifted plaintiff off the ground by the flexicuffs and started to pull plaintiff toward the line of correctional officers, causing plaintiff great pain. Plaintiff asked Loza and defendant correctional officer R. Singh ("Singh") to stop jerking him in this painful manner, but they did not. Plaintiff then lost his footing, at which point Loza and Singh swung plaintiff to the ground, causing plaintiff to slam his left shoulder into the ground. (Compl. ¶ 5.)

At that point, Loza sprayed plaintiff with pepper spray on his upper body, while he lay on his stomach. As a result, plaintiff experienced pain and was "mostly blinded" by the pepper spray. (Compl. ¶ 6.) Loza and defendant correctional officer D. Sandoval ("Sandoval") then picked plaintiff up by his arms and transported him indoors to the hobby shop. Once in the hobby shop, Loza and Sandoval pushed plaintiff to walk faster and, in so doing, pushed plaintiff toward a wall. To avoid hitting the wall with his face, plaintiff attempted to cushion the impact with his shoulder. (Compl. ¶ 8.) When he did so, Loza and

1 Sandoval began to assault plaintiff, hitting him in the head and body.  Plaintiff was slammed
2 on top of a table, where Loza and Sandoval continued to assault him until an unidentified
3 correctional officer intervened.  (Compl. ¶¶ 9-10.)  Plaintiff was then placed in a holding
4 "cage" inside the hobby shop.  (Compl. ¶¶ 11-12.)

5       While in the holding cage plaintiff was still in handcuffs and could no longer feel any
6 sensation in his hands.  He called to Loza and Sandoval to remove the handcuffs but they
7 ignored his pleas.  A few hours later the handcuffs were removed by Nurse Sanchez, who
8 also treated plaintiff's injuries and filled out a medical evaluation sheet.  (Compl. ¶¶ 13-14).

9       On or about February 28, 2007, plaintiff received a rules violation report with respect
10 to the above incident.  Defendants, in their attempt to cover up their use of excessive force,
11 stated in the report that plaintiff had battered defendants and, by twisting his upper torso, had
12 broken free from defendants' grasp, causing defendants to fall on top of him.  Further,
13 plaintiff's medical evaluation sheet "was tampered with and rewritten," omitting plaintiff's
14 injuries.  (Compl. ¶¶ 16-18.)[1]  As a result of defendants' actions, plaintiff suffered serious
15 injury to his head, neck, face and back, loss of sensation in his left hand, and stress, anxiety
16 and mental anguish.  (Compl. ¶ 19.)

17       Plaintiff claims defendants' actions violated his constitutional right, under the Eighth
18 Amendment, to be free from the use of excessive force.  See Hudson v. McMillian, 503 U.S.
19 1, 6-7 (1992).  He seeks monetary damages.

20 **DISCUSSION**

21 A.    Failure to Exhaust Administrative Remedies

22       Defendants move, under Rule 12(b) of the Federal Rules of Civil Procedure, to
23 dismiss the complaint on the ground plaintiff has failed to exhaust administrative remedies.

24       1.    Standard of Review

25       The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321
26 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions

27
28     [1] Plaintiff does not identify the individual(s) who engaged in this conduct.

3

under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[2] If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120.

2.   The Exhaustion Requirement

Exhaustion under § 1997(e)(a) is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 ("CCR"), § 3084.1(a).[3] In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal level appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California

---

[2] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop the record. Id. at 1120 n.14. Plaintiff was given such notice by the Court in the Order of Service.

[3] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

4

Department of Corrections and Rehabilitation ("Director").  See CCR § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

The exhaustion requirement cannot be satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 84.  Rather, "proper exhaustion" of available administrative remedies is required.  Id. at 92.  The requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion.  Jones v. Bock, 127 S. Ct. 910, 923 (2007).

An action must be dismissed unless the prisoner first exhausted his available administrative remedies before he filed suit.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

3.  Analysis

Defendants argue plaintiff did not exhaust his administrative remedies because he did not receive a decision from the Director's level of review with respect to his excessive force claim.

In support of their argument, defendants submit a declaration by N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch ("IAB") at the California Department of Corrections and Rehabilitation ("CDCR").  According to Grannis, the IAB keeps an electronic record of each inmate administrative appeal that has been addressed at the Director's level of review.  (Decl. N. Grannis Supp. Mot. Dismiss ("Grannis Decl.") ¶ 4.) Specifically, when an appeal is received by the IAB and is accepted for review at the Director's level of review, it is given an appeal number and logged into the system.  (Id.) When, however, an inmate submits an appeal that is "screened out," i.e., rejected for procedural reasons, at the Director's level of review, the appeal is returned to the inmate and is not given an appeal number.  (Id. ¶ 6.)  The IAB, however, does keep an electronic record of the following information for screened out appeals: IAB log number, category (nature/subject) of the appeal, institutional log number of the appeal (if available), inmate name and CDCR number, institution where the appeal arose, date the appeal was received by

the IAB, date the appeal was screened out by the IAB, and the reason the appeal was screened out.  (Id.)

Attached to Grannis's declaration is the IAB computer printout of a report showing each inmate appeal submitted by plaintiff to the Director's level of review.  (Id. ¶ 8 & Ex. A.)  The report lists which of plaintiff's appeals were addressed at the Director's level of review and which appeals were screened out at the Director's level of review.  (Id.)

Additionally, defendants submit a declaration by E. Medina ("Medina"), an Appeals Coordinator at SVSP.  Medina's job duties include processing inmate appeals, assigning appeals to the appropriate staff for review, and monitoring and maintaining the computer database in the SVSP inmate appeals office.  (Decl. E. Medina Supp. Mot. Dismiss ("Medina Decl.") ¶ 1.)  Inmate appeals that have been submitted for review and meet CCR criteria for review are recorded in the computer database.  (Id. ¶ 2.)  Attached to Medina's declaration is a printout of a report from the computer database showing all appeals filed by plaintiff at SVSP through May 28, 2008.  (Id. & Ex. A.)  The report tracks the status of each of plaintiff's appeals in the SVSP appeals process.  (Id.)

The records attached to the Grannis and Medina declarations show the following:  On March 28, 2007, the SVSP inmate appeals office logged in as received from plaintiff an appeal regarding the February 12, 2007 incident at issue in the instant action.  (Medina Decl. ¶ 5 & Exs. A & B.)  The appeal was given log number "SVSP-D-07-01389."  (Id.)  Because the appeal alleged the use of excessive force by SVSP staff, the appeal was designated as a staff complaint pursuant to CCR § 3084.5 and, consequently, it automatically bypassed the informal level of review.[4]  (Medina Decl. ¶ 5 & Ex. B.)  At the first formal level of review, the appeal was screened out as untimely because plaintiff had not complied with CCR § 3084.6(c), which regulation provides that a prisoner must submit an appeal "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower appeal level decision."  (Id.)  Plaintiff then submitted his appeal to the Director's level of

---

[4]CCR 3084.5(a)(1)(G) provides that the informal level of review shall be waived for, inter alia, "allegations of misconduct by a departmental peace officer."

review, where it was screened out because the appeal had not proceeded through the second level of review.[5]  (Grannis Decl. Ex. A.)  Plaintiff resubmitted his appeal to the Director's level of review, where it was again screened out.  (Id.)

In opposition to the motion to dismiss, plaintiff does not dispute respondent's showing that his appeal concerning the claim at issue herein was not addressed on the merits at the Director's level of review.  Rather, he argues the Court should allow his claim to proceed because his appeal was improperly screened out as untimely at the first level of review and, as a result, prison officials prevented him from submitting an appeal and receiving a decision at the second level of review.  Thus, plaintiff argues, he was unable to exhaust his administrative remedies because no such remedies remained available to him.  See Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (holding prisoner need not exhaust further levels of review once he either has received all remedies available at intermediate level of review or has been reliably informed by administrator that no more remedies are available). Specifically, plaintiff alleges the following:

(1) Plaintiff first timely submitted his appeal for review on February 28, 2007, not March 28, 2007, as defendants assert.  In support of his contention, plaintiff points to his administrative appeal, which is signed by plaintiff and dated February 28, 2007.  (Compl. Ex. F at 4.)

(2)  On March 28, 2007, the appeal was returned to plaintiff with an Inmate/Parolee Appeal Screening Form.  On the form, SVSP Appeals Coordinator Medina wrote that the appeal was being returned as untimely because the date of the alleged incident was February 12, 2007, and plaintiff had submitted his appeal on March 6, 2007, which date was more than fifteen working days after the incident being appealed had occurred.  (Compl. Ex. F at 2.)

(3)  On the same date the screened-out appeal was returned to plaintiff, March 28, 2007, plaintiff resubmitted the appeal, together with an inquiry to Medina as to which appeal

---

[5] CCR 3084.5(c) provides that the second formal level of review must be completed before an inmate files an appeal at the third, i.e., Director's level, of review.

7

1  Medina deemed to be untimely, in that plaintiff had submitted his appeal on February 28,
2  2007, and not on March 6, 2007.  (Compl. Ex. F at 3. )

3        (4)  On April 10, 2007, the appeal was returned to plaintiff with no response.  That
4  same date, plaintiff resubmitted the appeal, requesting a second level response.  (Compl. Ex.
5  F at 5.)  On April 11, 2007, Medina returned the appeal to plaintiff with the original screen-
6  out form from March 28, 2007; the form now included an additional notation by Medina that
7  the appeal had been sent to "Hiring Authority" for review and had been rejected as untimely.
8  Further, Medina wrote, "Do not resubmit appeal."  (Compl. Ex. F at 2.)

9        In his opposition, plaintiff argues that defendants' exhibits showing plaintiff first
10 submitted his appeal on March 28, 2007 are inaccurate, as evidenced by the fact that his
11 appeal is signed and dated February 28, 2007, and that, contrary to the assertion by Medina
12 that plaintiff first submitted his appeal on March 6, 2007, the SVSP appeal log does not
13 reflect the filing of any appeal on that date.

14       In reply, defendants argue their contentions are supported by uncontraverted evidence
15 that shows plaintiff's original SVSP appeal bears a stamped received date of March 28, 2007,
16 (Medina Decl. Ex. B), and the SVSP appeals computer database also shows such date is the
17 date on which the appeal was received at the first level of review.  (Id. Ex. A).

18       When deciding a non-enumerated Rule 12(b) motion, the Court may look beyond the
19 pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  To date, however,
20 the evidence submitted by defendants is insufficient to establish plaintiff's failure to exhaust
21 his administrative remedies.  In particular, defendant's evidence is insufficient to establish
22 plaintiff failed to comply with the deadline for filing a timely appeal.  Indeed, defendant's
23 themselves have submitted conflicting evidence in that regard.  Although the appeals log
24 reflects a "received" date of March 28, 2007, Medina, in a form by which the appeal was
25 returned to plaintiff, informed plaintiff the appeal had been received on March 6, 2007.
26 Further, the appeal is signed and dated February 28, 2007, which is the date plaintiff alleges
27 he submitted it.  Under such circumstances, the Court concludes defendants' records are
28 inadequate to establish plaintiff failed to file a timely appeal.  See Wyatt, 315 F.3d at1120

1  (finding documents produced by defendants inadequate to establish plaintiff failed to
2  exhaust).  Consequently, in the absence of additional evidence as to how this appeal was
3  processed, the Court cannot find it is more likely than not that the appeal was not filed in a
4  timely manner.

5       For the foregoing reasons, the Court finds defendants have failed to show
6  administrative remedies remained available to plaintiff to properly exhaust the claim raised in
7  the instant complaint.  Accordingly, defendants' motion to dismiss the complaint on the
8  ground plaintiff failed to exhaust administrative remedies will be denied.  See Brown, 422
9  F.3d at 940 (holding prisoner satisfied exhaustion requirement where he did not pursue third
10  level appeal but had exhausted all administrative remedies available to him).

11  B.    Qualified Immunity

12       Defendants assert they are entitled to qualified immunity on plaintiff's claim of
13  excessive force.  Although defendants do not state whether they bring their motion for
14  qualified immunity as a motion to dismiss, pursuant to Rule 12(b)(6), or as a motion for
15  summary judgment, pursuant to Rule 56, defendants, in support of their motion, have
16  submitted no declarations or other evidence outside the pleadings relevant to a qualified
17  immunity determination and rely solely on documents attached to plaintiff's complaint.
18  Accordingly, the Court will decide the motion as a motion to dismiss pursuant to Rule
19  12(b)(6).  Cf. Fed. R. Civ. P. 12(d) (providing Rule 12(b)(6) motion that relies on matters
20  outside pleadings must be decided as Rule 56 motion); see also Hydrick v. Hunter, 500 F.3d
21  978, 985 (9th Cir. 2007) (deciding issue of qualified immunity asserted in Rule 12(b)(6)
22  motion).

23      1.    Standard of Review

24       A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted
25  if the complaint does not proffer "enough facts to state a claim for relief that is plausible on
26  its face."  Bell Atlantic Corp v Twombly, 127 S. Ct 1955, 1974 (2007).  The court "must
27  accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus,
28  127 S. Ct. 2197, 2200 (2007), but need not accept as true allegations that are legal

9

conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Federal courts are particularly liberal in construing allegations made in pro se civil rights complaints. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). In ruling on a Rule 12(b)(6) motion, the court may not consider any material outside the complaint but may consider exhibits attached thereto. See Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 925 (9th Cir. 2001); Fed. R. Civ. P. 10(c) (treating exhibits attached to complaint as part of complaint for purposes of ruling on 12(b)(6) motion).

### 2. Analysis

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (quotation and citation omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. First, the court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, a constitutional violation could be made out, the next sequential step is to ask whether the right was clearly

established. Id. If the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. Id. at 202.

### a. Constitutional Violation

Defendants argue the facts alleged by plaintiff in his complaint fail to show defendants violated plaintiff's Eighth Amendment right to be free from the use of excessive force.

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 7. A prisoner need not allege that he suffered serious injury in order to establish an Eighth Amendment violation. Id.

Here, defendants argue plaintiff cannot show defendants used excessive force because, in contradiction to the allegations in the complaint, the exhibits attached to the complaint show defendants did not use force maliciously and sadistically, but, rather, used force to maintain order and security after plaintiff refused to comply with defendants' orders following a disturbance where more than 100 inmates refused to leave the yard. Defendants further argue that while medical records show plaintiff suffered injuries consistent with defendants' having to force plaintiff to the ground and pepper spray him due to his failure to comply with defendants' orders, the records do not show plaintiff suffered any injuries to his wrists, upper torso or lower torso, from being dragged and assaulted as plaintiff alleges. In support of their argument, defendants rely on the Crime/Incident Report and Rules Violation Report attached by plaintiff to his complaint, which reports were prepared for prison officials by defendant Loza following the incident at issue. (See Compl. Exs. A & G.) Additionally,

defendants rely on the Medical Report attached by plaintiff to his complaint, which report was prepared following the incident at issue and shows that plaintiff was pepper sprayed and various injuries were found. (See Compl. Ex. D.)

In opposition, plaintiff objects to defendants' characterization of the facts and reasserts the allegations in his complaint. Plaintiff thus makes clear that he is not adopting as true all of the allegations in the exhibits attached to his complaint. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir. 1995) (holding Rule 10(c) of Federal Rules of Civil Procedure, providing that "an exhibit to a pleading is a part of the pleading for all purposes," does not require plaintiff to adopt as true full contents of documents attached to complaint).

In his complaint, plaintiff alleges that although he was not resisting and posed no threat to prison security, defendants kneed him in the back, placed him in excessively tight flexicuffs, lifted him from the ground and pulled him by the flexicuffs, shoved him to the ground, pepper sprayed him, and slammed him onto a table and assaulted him. Accepting plaintiff's factual allegations as true and construing them in the light most favorable to him, see Cahill, 80 F.3d at 337-38, the Court finds plaintiff has stated a claim for the use of excessive force in violation of the Eighth Amendment. See Hudson, 503 U.S. at 4-5 (holding Eighth Amendment claim for excessive force stated whenever correctional officers use wanton and unnecessary force, even in absence of serious injury).

    b.  Clearly Established Right

As noted, the second step in the qualified immunity analysis requires the court to determine whether the right was clearly established. In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quotation and citation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

Here, defendants do not argue that, by 2007, the law was not clearly established that prison officials are precluded from using unnecessary force against inmates. Rather,

defendants maintain it would not have been clear to a reasonable officer that the conduct alleged by plaintiff was unlawful in the context of subduing an inmate during a prison standoff.  When, as required at this stage of the proceedings, the facts pleaded are viewed in the light most favorable to plaintiff, however, plaintiff's allegation that defendants assaulted him when he was not resisting and posed no threat is sufficient to plead conduct that a reasonable person in defendants' position would know was unlawful.  See Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding prison guard not entitled to qualified immunity where no trained prison officer could reasonably believe he could lawfully kick genitals of prisoner who was on ground and in handcuffs).

For the reasons stated above, the Court finds defendants are not entitled to qualified immunity.  Accordingly, defendants' motion to dismiss the complaint on such ground will be denied.

C.  Motion to Stay Discovery

Together with their reply to plaintiff's opposition to the motion to dismiss, defendants filed a motion to stay discovery until the Court has ruled on the motion to dismiss. Specifically, defendants request that discovery be stayed because they have moved for qualified immunity.  Plaintiff has not opposed defendants' motion to stay discovery.

As a general rule, a district court should stay discovery until the issue of qualified immunity is resolved.  See Crawford-El v. Britton, 523 U.S. 574, 598 (1998); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  As the Court, by the instant order, has now resolved the issue of qualified immunity against defendants, the motion to stay discovery will be denied as moot.

**CONCLUSION**

For the reasons stated above, the Court rules as follows:

1. Defendants' motion to dismiss the complaint for failure to exhaust administrative remedies or, alternatively, on grounds of qualified immunity is hereby DENIED.  (Docket No. 14.)

2. Defendants' motion to stay discovery is hereby DENIED as moot.  (Docket No.

13

23.)

3. No later than **ninety (90)** days from the date this order is filed, defendants shall file a motion for summary judgment or, alternatively, shall inform the Court they are of the opinion that this case cannot be resolved by summary judgment. The motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.

4. Plaintiff's opposition to the motion for summary judgment shall be filed with the Court and served on defendants no later than **thirty (30)** days from the date defendants' motion is filed.

The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.
>
> When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed another will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir.

1994).

5. Defendants shall file a reply brief no later than **fourteen (14)** days after plaintiff's opposition is filed.

6. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

7. All communications by the plaintiff with the Court must be served on defendants' counsel, by mailing a true copy of the document to defendants' counsel.

8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

9. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

10. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making the motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is received. Any motion for an extension of time must be filed no later than the deadline sought to be extended.

This order terminates Docket Nos. 14 and 23.

IT IS SO ORDERED.

DATED: November 24, 2008

_____
MAXINE M. CHESNEY
United States District Judge