United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAHIR ALBERTO ROJAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. LOZA, Correctional Officer, R. SINGH, Correctional Officer, D. SANDOVAL, Correctional Officer,<br><br>　　　　Defendants.<br>_____ | No. C 07-4662 MMC (PR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE FOR SETTLEMENT PROCEEDINGS; DIRECTIONS TO CLERK**<br><br>**(Docket No. 32)** |

　　　　On September 10, 2007, plaintiff, a California prisoner then incarcerated at Salinas Valley State Prison ("SVSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. Thereafter, the Court ordered plaintiff's complaint served on three SVSP employees alleged to have violated plaintiff's Eighth Amendment right to be free from the use of excessive force. Subsequently, after briefing by all parties, the Court denied defendants' motion to dismiss, in which they argued the action should not proceed because plaintiff failed to exhaust his administrative remedies before filing suit, or, alternatively, because defendants are entitled to qualified immunity. The Court directed defendants to either file a motion for summary judgment or inform the Court they are of the opinion that this case cannot be resolved by summary judgment. Now before the Court is defendants'

motion for summary judgment. Plaintiff has not filed opposition thereto.[1]

## FACTUAL BACKGROUND[2]

In February 2007, plaintiff was housed at SVSP in facility C. (Compl. ¶ 1.) At that time, defendants R. Loza ("Loza"), D. Sandoval ("Sandoval") and R. Singh ("Singh") were correctional officers in facility C. (Decl. Loza Supp. Mot. Summ. J. ("Loza Decl.") ¶ 2; Decl. Sandoval Supp. Mot. Summ. J. ("Sandoval Decl.") ¶ 2; Decl. Singh Supp. Mot. Summ. J. ("Singh Decl.") ¶ 2).

On February 12, 2007, at approximately 3:15 p.m., defendants responded to a disturbance taking place on the yard and involving forty-five to sixty African-American inmates and seventy-five to eighty Southern Hispanic inmates. The disturbance led to a "stand off" between the two inmate groups. Due to the magnitude of the incident, approximately forty additional staff were ordered to respond to the scene. Responding staff were instructed to form a skirmish line, and a Code III alert, the highest security code, was initiated. Because more than 100 inmates refused to leave the yard voluntarily, a determination was made that correctional officers should secure each inmate in flex-cuffs. (Loza Decl. ¶ 7; Sandoval Decl. ¶ 7; Singh Decl. ¶ 7.) As a result, a correctional officer ordered plaintiff to crawl backward to the skirmish line to be handcuffed. (Compl. ¶ 1; Loza

---

[1] In its November 24, 2008 order denying defendants' motion to dismiss (see Docket No. 25), the Court explained to plaintiff what he must do to oppose a motion for summary judgment filed by defendants. Defendants filed the instant motion for summary judgment on April 20, 2009 and, according to the proof of service attached thereto, also served plaintiff with the motion at his current address at the California Correctional Institution at Tehachapi. (See Docket No. 38 at 4.) In the ensuing months, plaintiff has not filed an opposition to defendants' motion, nor has he otherwise communicated with the court. It has come to the Court's attention, however, that plaintiff was not sent a copy of the order denying defendants' motion to dismiss at his current address. Consequently, he was not aware of the Court's order informing him what he must do to oppose the motion. In view of the Court's ruling herein denying the motion for summary judgment, the Court finds plaintiff has not been prejudiced by his lack of receipt of the Court's prior order. The Clerk will be directed to send plaintiff a copy of the Court's November 24, 2008 order together with the instant order.

[2] The following facts are derived from plaintiff's verified complaint and the parties' exhibits. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (holding verified complaint may be used as opposing affidavit under Rule 56 if based on personal knowledge and sets forth specific facts admissible in evidence).

2

Decl. ¶ 7.) The parties differ as to their accounts of what occurred next.

A.    Plaintiff's Facts

According to plaintiff, the following events occurred:

Plaintiff yelled out that he could not crawl backwards because of an injured right knee, and he started to stand up to walk the estimated seventy feet to the line to be handcuffed. (Compl. ¶¶ 2-3.) In response, correctional officers instructed plaintiff to get down and crawl backwards. Plaintiff complied, but continued to plead that he could not crawl because of his right knee. (Compl. ¶ 3.) Correctional officers then instructed plaintiff to lie on his stomach and place his hands on his sides. Plaintiff complied with the request. Nevertheless, Loza aggressively thrust his knee into plaintiff's back, causing plaintiff to lose his breath. Loza next placed plastic flex-cuffs on plaintiff and, in so doing, caused the flex-cuffs to dig into plaintiff's wrists and restrict the blood flow to his hands. Loza then lifted plaintiff off the ground by the flex-cuffs and started to pull plaintiff toward the line of correctional officers, causing plaintiff great pain. Plaintiff asked Loza and Singh to stop jerking him in this painful manner, but they did not. Plaintiff then lost his footing, at which point Loza and Singh swung plaintiff to the ground, causing plaintiff to slam his left shoulder into the ground. (Compl. ¶ 5.) Loza then sprayed plaintiff with pepper spray on his upper body, while plaintiff lay on his stomach. As a result, plaintiff experienced pain and was "mostly blinded" by the pepper spray. (Compl. ¶ 6.)

Next, Loza and Sandoval picked plaintiff up by his arms and transported him indoors to the hobby shop. Once in the hobby shop, Loza and Sandoval pushed plaintiff to walk faster and, in so doing, pushed plaintiff toward a wall. To avoid hitting the wall with his face, plaintiff attempted to cushion the impact with his shoulder. (Compl. ¶ 8.) When he did so, Loza and Sandoval began to assault plaintiff, hitting him in the head and upper and lower torso. Plaintiff was slammed on top of a table, where Loza and Sandoval continued to assault him about the head and torso until an unidentified correctional officer intervened. (Compl. ¶¶ 9-10.) Plaintiff was then placed in a holding cell inside the hobby shop. (Compl. ¶¶ 11-12.)

3

A few hours later the handcuffs were removed by Nurse Sanchez, who treated plaintiff's injuries and filled out a medical evaluation sheet. On the medical evaluation sheet, Nurse Sanchez noted injury to plaintiff's wrists as well as other injuries he had sustained. (Compl. ¶¶ 13-14). Subsequently, however, the medical evaluation sheet "was tampered with and rewritten," omitting the injuries to plaintiff's wrists and upper and lower torso. (Compl. ¶¶ 16-18.) As a result of defendants' actions, plaintiff suffered serious injury to his head, neck, face and back, loss of sensation in his left hand, and stress, anxiety and mental anguish. (Compl. ¶ 19.)

B.   Defendants' Facts

According to defendants, the following events occurred:

After a correctional officer ordered plaintiff to crawl backward to the skirmish line to be handcuffed, plaintiff did not comply but, instead, shouted "fuck that shit" and began advancing toward Loza with clenched fists. (Loza Decl. ¶ 7 & Ex. A (Crime Incident Report) at 2.) After Loza ordered plaintiff multiple times to lie face down on the ground, plaintiff did so; Loza flex-cuffed plaintiff and, with Singh, began escorting plaintiff to the skirmish line. (Loza Decl. ¶ 7 & Ex. A at 2; Singh Decl. ¶ 7.) During the escort, plaintiff resisted, swung his arms, and struck Loza in the rib cage. Loza then placed both hands on plaintiff's back and used his body weight to force plaintiff to the ground. As a result, plaintiff landed on his upper torso and the left side of his face. (Id.) Plaintiff then shouted "get them," and several unsecured Southern Hispanic inmates began advancing toward Loza as plaintiff continued to swing his arms and kick his feet. (Loza Decl. ¶ 7 & Ex. A at 2; Sandoval Decl. ¶ 7; Singh Decl. ¶ 7.) Loza deployed his pepper spray at plaintiff and the advancing inmates and dispersed a pepper spray "grenade" at the advancing inmates as well. (Loza Decl. ¶ 7 & Ex. A at 2.) Other correctional staff used their "Gas Launchers," firing 264 rounds before a majority of the advancing inmates complied with staff orders to lie on the ground. (Decl. J. Celaya Supp. Mot. Summ. J. ("Celaya Decl." ¶ 4.)

Defendants Loza and Sandoval then escorted plaintiff to a temporary holding cell in the Health Services Annex. (Loza Decl. ¶ 9 & Ex. C (Rules Violation Report) at 2.) While

Loza and Sandoval attempted to place plaintiff in the cell, he began to vigorously shake his body from right to left and broke free of the correctional officers' hold. (Id.; Sandoval Decl. ¶ 8.) Even though plaintiff's hands were restrained by the flex-cuffs, he grabbed Loza's right forearm and, falling forward, pulled Loza on top of him and to the ground. Loza and Sandoval then regained control of plaintiff and placed him in the temporary holding cell. (Loza Decl. ¶ 9; Sandoval Decl. ¶ 8.)

Plaintiff later was escorted to the medical clinic for evaluation. (Celaya Decl. ¶ 7; Loza Decl. ¶ 12 & Ex. D (Medical Report of Injury or Unusual Occurrence).) The medical evaluation sheet shows an area of bruising on the upper left side of plaintiff's head, swelling of the left eye, an abrasion and bruise to the left shoulder, and pepper spray exposure to the front torso and back shoulders. (Loza Decl. Ex. D.) The medical evaluation sheet does not show any injuries to plaintiff's wrists, upper torso or lower torso. (Id.)

Following the yard disturbance of February 12, 2007, Correctional Lt. Celaya ("Celaya") conducted an initial assessment to determine whether the seriousness of the incident and/or extent of injuries warranted further investigation. (Celaya Decl. ¶ 2.) Celaya determined that no further investigation was required and that Loza and Singh, in using physical force, restraints and pepper spray on plaintiff, acted properly and in accordance with SVSP's "Use of Force Policy." (Celaya Decl. ¶¶ 5-6 & Exs. A (Crime Investigation Report) at 3, B (SVSP Use of Force Policy); Loza Decl. ¶ 10; Sandoval Decl. ¶ 9.) Additionally, Celaya determined that plaintiff should be charged with a rules violation for battery on a peace officer. (Celaya Decl. ¶ 8.)

At the rules violation hearing, a videotape of the February 12, 2007 incident was played and showed plaintiff getting up from the ground and approaching the skirmish line. (Decl. R. Parin Supp. Mot. Summ. J. ("Parin Decl.") ¶¶ 4, 5.) Plaintiff was found guilty of battery on a peace officer. (Id. ¶ 5.)

//
//
//

5

**DISCUSSION**

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . , since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting

evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition.  Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994).  The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  See United States v. Real Property at Incline Village, 47 F.3d 1511, 1519-20 (9th Cir. 1995) (holding local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. Degen v. United States, 517 U.S. 820 (1996).

B.   Analysis

Plaintiff claims defendants' actions violated his constitutional right, under the Eighth Amendment, to be free from the use of excessive force on two separate occasions: (1) in the course of defendants' interactions with plaintiff on the facility C yard during the disturbance, and (2) when plaintiff was taken to the holding cell.

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Id. at 7.  A prisoner need not allege that he suffered serious injury in order to establish an Eighth Amendment violation.  Id.

1.   Use of Force on the Facility C Yard

Plaintiff, in his verified complaint, alleges defendants used excessive force in the

7

course of their interactions with him on the yard during the disturbance when: (1) after plaintiff complied with instructions to lie on his stomach and place his hands on his sides, defendant Loza, for no reason, aggressively thrust his knee into plaintiff's back and then placed flex-cuffs on plaintiff so tightly that they dug into plaintiff's wrists and restricted the blood flow to plaintiff's hands; (2) Loza lifted plaintiff off the ground by the flex-cuffs and Loza and Singh pulled plaintiff by the flex-cuffs toward the line of correctional officers, causing plaintiff great pain; (3) plaintiff stumbled and Loza and Singh then swung him to the ground, causing him to slam his left shoulder into the ground; and (4) as plaintiff lay on the ground on his stomach and not moving, Loza deployed pepper spray at plaintiff's upper body, causing plaintiff to experience pain and be "mostly blinded" by the spray. Plaintiff claims that as a result of defendants' actions, he suffered serious injury to his head, neck, face and back, loss of sensation in his left hand, and stress, anxiety and mental anguish.

By contrast, defendants offer evidence that (1) Loza did not thrust his knee into plaintiff's back or cuff plaintiff too tightly; (2) Loza and Singh did not lift and pull plaintiff by the flex-cuffs; (3) Loza forced plaintiff to the ground onto his left side only after plaintiff resisted, swung his arms, and struck Loza in the rib cage; (4) Loza deployed his pepper spray at plaintiff while plaintiff was on the ground because plaintiff continued to swing his arms and kick his feet and shouted to several unsecured approaching inmates to "get them," referring to the correctional officers. Additionally, defendants argue that although the medical evaluation sheet prepared by Nurse Sanchez after the incident shows plaintiff suffered injuries consistent with defendants' forcing plaintiff to the ground onto his left side and using pepper spray on him, there is no showing of injury to support plaintiff's assertions that defendants used malicious and sadistic force by dragging him by the wrists with the flex-cuffs or spraying pepper spray into plaintiff's eyes.

The Court finds plaintiff has raised a triable issue of fact with respect to whether defendants used force maliciously and sadistically to cause harm, rather than to maintain order and security on the facility C yard. Specifically, plaintiff has produced evidence, in the form of allegations in his verified complaint and exhibits attached thereto, showing he was

assaulted by Loza and handled roughly by Loza and Singh after he complied with orders to cuff up and did not resist leaving the yard, was thrown to the ground by Loza after he stumbled but posed no threat to defendants, and was pepper sprayed for no reason while he was lying unresisting on the ground on his stomach.

Accordingly, defendants' motion for summary judgment will be denied as to this claim.

2. <u>Use of Force After Removal from Facility C Yard</u>

Plaintiff, in his verified complaint, alleges defendants used excessive force after they removed him from the facility C yard when, even though plaintiff was not resisting or posing a security threat, Loza and Sandoval (1) picked plaintiff up by his arms to transport him indoors; (2) pushed plaintiff toward a wall inside the holding cell and, when plaintiff attempted to cushion the impact of hitting the wall, began to assault plaintiff, hitting him in the head and upper and lower torso; and (3) slammed him on top of a table and continued to assault him about the head and torso until an unidentified correctional officer intervened.

Defendants, by contrast, have submitted evidence that at the time Loza and Sandoval were attempting to place plaintiff in the holding cell, he began to vigorously shake his body from right to left, broke free of the correctional officers' hold, and grabbed Loza's right forearm, pulling Loza on top of him and to the ground. According to defendants, they then, without the use of excessive force, regained control of plaintiff and placed him in the holding cell without further incident. Additionally, defendants argue, the medical evaluation sheet does not support plaintiff's claims because it does not show injury to plaintiff's face and torso consistent with plaintiff's having been beaten about the head and torso or slammed on top of a table.

The Court finds plaintiff has raised a triable issue with respect to whether defendants used excessive force after removing him from the facility C yard. Additionally, as noted above, a triable issue of material fact exists with respect to the extent of the injuries plaintiff suffered.

Accordingly, defendants' motion for summary judgment will be denied as to this

9

claim.

C.     Qualified Immunity

Defendants, in addition to the above-described argument that no constitutional violation occurred, argue they are entitled to qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 495 (1991) (quotation and citation omitted).

A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). The court may exercise its discretion in deciding which prong of the test to address first, in light of the particular circumstances of the case. Id. With respect to the first prong, the threshold question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). With respect to the second, the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. "If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did," such questions of fact are for the jury to determine, and, consequently, summary judgment on the issue of qualified immunity cannot be granted. Sinaloa Lake Owners Assn. v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995).

Here, as discussed above, there is a genuine issue of material fact as to what happened between defendants and plaintiff, such that it is not possible to say on summary judgment that a reasonable correctional officer in defendants' position would have thought it was

constitutional to apply the force defendants used. Additionally, if the facts are viewed in the light most favorable to plaintiff, as they must be at this stage of the proceedings, it is clear that defendants are not entitled to qualified immunity, because a reasonable person in defendants' position would know it was unlawful to use the degree of force described by plaintiff where the prisoner is not resisting and otherwise poses no threat. See, e.g., Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding prison guard not entitled to qualified immunity where no trained prison officer could reasonably believe he could lawfully kick genitals of prisoner who was on ground and in handcuffs).

Accordingly, defendants' motion for summary judgment on grounds of qualified immunity will be denied.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment is hereby DENIED.

2. The court has established a Pro Se Prisoner Mediation Program under which prisoner civil rights cases may be referred to a neutral Magistrate Judge for mediation. The Court finds the instant matter suitable for mediation proceedings prior to setting the matter for trial. The proceedings shall take place within ninety days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time and date for one or more mediation conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all mediation proceedings, file with the Court a report thereon.

The Clerk is directed to serve Magistrate Judge Vadas with a copy of this order and to notify Magistrate Judge Vadas that a copy of the court file can be retrieved from the court's electronic filing database (ECF).

3. All communications by plaintiff with the Court must be served on defendants' counsel by mailing a true copy of the document to defendants' counsel.

4. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely

11

fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

    5. <u>The Clerk shall send plaintiff a copy of this order together with a copy of the November 24, 2008 order denying defendants' motion to dismiss (Docket No. 25).</u>

    This order terminates Docket No. 32.

    IT IS SO ORDERED.

DATED: March 8, 2010

                                            _____
                                            MAXINE M. CHESNEY
                                            United States District Judge